ROBERT L. MUELLER, Adm'r of the Estate of Willard H. Maberry, Deceased, *et al.*, Plaintiffs-Appellees, *v.* SANGAMO CONSTRUCTION CO., Defendant-Appellant.

(No. 12003;

Fourth District—July 17, 1974.

*Rehearing denied August 19, 1974.*

W. J. Simhauser, of Springfield, for appellant.

Robert L. Mueller and James T. Londrigan, both of Springfield, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The circuit court of Sangamon County entered judgment for the plaintiff administrator in a wrongful death action and for the widow of the decedent for funeral expenses. The defendant appeals from such judgments and contends that there was insufficient evidence to go to the jury on the issue of due care on the part of plaintiff's decedent. We reverse.

The incident resulting in Willard H. Maberry's death occurred on March 18, 1969, as he was driving a tractor trailer north on Interchange 55 at a detour point south of the Lake Springfield bridge. On that date, the defendant was constructing a new bridge under contract with the State of Illinois. The decedent was proceeding north in the right northbound lane when he came to a detour. The detour rerouted the two northbound traffic lanes from the old bridge to the new. The old center line dividing the two northbound lanes curved to the left, forming a

V with the new center line on the detour leading the two northbound lanes straight ahead and across the new bridge. The decedent had turned into the left-hand lane before reaching this point. He missed the correct detour to the right and drove left into what had previously been the old roadbed, but which at the time of the accident was a median strip between northbound and southbound lanes. There was a pile of broken concrete in this median at a distance of about 233 feet from the point where the truck of the decedent left the road and 15 to 28 feet from the new pavement. The tractor trailer collided with this pile of concrete and the decedent was killed when sheets of steel which he was hauling moved forward on the trailer and through the cab.

The only eyewitness to the accident was a trucker who was following the decedent's truck in his personal car on the night in question. When he first saw the truck he was 400 to 600 feet behind it and slowed down to between 40 and 50 mph, and this was the approximate speed of the truck. The light of the truck just disappeared and some rocks fell on top of his car as he moved on. He turned back to the wreck. The cab of the truck was resting on top of the concrete pile. The area was quite dark and the rubbish pile was some 4 to 5 feet in height and about 15 to 28 feet from the new pavement. Warning signs saying, "road construction ahead," "curve," and "detour ahead," were in place at the time of the accident. This witness did not see the truck slow down as it rounded the curve, nor did he see the brake lights of the truck come on and if they had come on, he was in a position where he would have seen them. He never saw any turn signal. When the truck started going around the curve it started to turn into the left-hand lane. There were southbound vehicles in the southbound lane to his left. The roadway was marked with hazard marker barrels and with hazard markers which would reflect the lights of an oncoming vehicle.

The decedent had been over this route previously twice before. Police officers testified that the marker barrels were in place earlier in the evening. Another witness testified that he had, on previous occasions, noted that the marker barrels on the left of the road had been hit by vehicles and the evidence indicates that this did happen occasionally. There were one or two wrecked barrels and hazard markers under the truck. There were no skid marks at all before or after the truck left the pavement. Since there was an eyewitness, there was no testimony as to the decedent's driving habits. The widow did testify that when her husband left earlier in the evening, he appeared to be alert and well rested and that he had a physical examination in February when he was discharged from the military service and again in March before he started the trucking job.

The evidence clearly shows that the "road construction sign" was about 2,000 feet, the "curve" sign about 1,500 feet and the "detour ahead" sign about 1000 feet south of the accident scene. A witness for the defendant testified that it was the responsibility of the State to designate where the marker signs and barrels were to go and it was the defendant's responsibility to place them there. At 4 on the afternoon of the accident, everything was in place. The accident took place around 11:30 in the evening.

■■ From the facts above recited, it seems abundantly clear that the occurrence and preoccurrence events are not in dispute. Under such circumstances, verdicts ought to be directed and judgments n.o.v. entered only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) Questions of negligence and contributory negligence are ordinarily matters for the jury. (*Johnson v. Skau*, 33 Ill.App.2d 280, 179 N.E.2d 40.) Where there exists, however, a difference of opinion as to the inferences which may legitimately be drawn from undisputed facts, the questions of negligence and contributory negligence are primarily for the jury. (*Cloudman v. Beffa*, 7 Ill.App.2d 276, 129 N.E.2d 286.) Where the plaintiff's due care cannot be established by direct testimony, it may be inferred by the jury from all of the facts and circumstances shown to exist prior to and at the time of the collision. The burden rests with the plaintiff to show such facts and circumstances which are free from the taint of speculation and conjecture. (*Compton v. Frank*, 126 Ill.App.2d 356, 261 N.E.2d 727.) In the case at bar, the sole question is, therefore, whether or not the plaintiff has sustained that burden.

The testimony is undisputed that the marker barrels were frequently struck at this location; that there was little or no effective lighting at the scene; that lights of vehicles coming from the south furnished a hazard; and that speaking generally, the detour was hazardous. As against this set of circumstances, the record is completely silent as to anything done affirmatively by the decedent to avoid this occurrence. More than 2,000 feet back he was made aware of construction. More than 1,500 feet back was a sign indicating a curve. More than 1,000 feet back was a sign stating, "detour ahead." The eyewitness testified that the decedent apparently did not slow down, although he might have slowed down as much as 5 miles per hour without him noticing it. The record shows that the rock pile was 230 feet over a gravel surface from the place where the decedent went off the road and that the truck required 275 to 300 feet to stop on a dry level pavement. The decedent was making

his third trip within a week hauling steel from Granite City to Chicago. It is apparent that the road conditions here have existed in this fashion for at least that length of time, if not longer. There was, likewise, testimony that had the decedent applied his brake suddenly and locked the wheels, the steel load might shift and move forward over the driver. In fact, that is exactly what did happen when he struck the concrete. There is nothing in this record that remotely suggests that the decedent did anything to avoid the accident even after he knew or must have known that he had hit one of the barrels. Why he did not note the turn to the right rather than to the left when he had been over this road twice before within a week or 10 days, why he did not slow down to a point where his truck was under his absolute control with full knowledge of a construction area and with previous knowledge of the detour and previous road conditions, is not shown. Every witness who testified for either side considered this a hazardous area. The decedent, too, had been over it twice before and what was apparent to others should have been readily apparent to him.

■■■ Under these circumstances, we cannot say that the defendant was confronted with a sudden and an unknown peril which would delimit his requirement to exercise due care and caution for his own safety, nor do we believe that it can be fairly said from the evidence in this case that the defendant induced his action because the old center line turned to the left or because some 1,500 feet or more back there apparently was a sign indicating a left turn. He knew better than that. He had been over this road before. As this court observed in *Dominick v. Behrends*, 130 Ill.App.2d 726, 264 N.E.2d 297, the credible evidence in this record negates any reasonable inference that he was in the exercise of due care and caution for his own safety. There are simply no facts from which a jury might reasonably presume or reasonably infer that the decedent was in the exercise of due care and caution for his own safety. It is pure speculation and guess on the part of the jury to say that the center line turning to the left or the curve sign some 1500 feet back lead this defendant into a trap. Having been over this road twice before, he was fully aware that neither of them were correct and accurate. He negotiated this same route twice before with safety. We are constrained to hold that the plaintiffs failed to carry the burden of proof and that the trial court should have directed verdicts for the defendant.

The judgments are accordingly reversed.

Reversed.

TRAPP and SIMKINS, JJ., concur.