STATE of Alaska, Appellant,

v.

Mary GUINN, Administratrix of the Estate
of Robert Eric Guinn, Appellee.

No. 2451.

Supreme Court of Alaska.

Sept. 15, 1976.

Charles Hagans and Sanford M. Gibbs of Hagans, Smith & Brown, Anchorage, Dennis E. Cook of Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellant.

Millard F. Ingraham of Rice, Hoppner & Hedland, Fairbanks, for appellee.

## OPINION

Before BOOCHEVER, C. J., RABIN-OWITZ, ERWIN and BURKE, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Justice.

Chena Hot Springs Road is a two-lane public highway northeast of the city of Fairbanks running in an east-west direction. Due to climatic conditions, during the winter of 1969–70 a number of vehicles were parked on the shoulders of this road. To avoid these and other obstacles, drivers customarily left their lane of travel and traveled down the middle of the road. Those familiar with the conditions on the road that winter became accustomed to the hazards along it and anticipated them in their actions. One resident described the condition of Chena Hot Springs Road that winter as "personalized."

A regular traveler of the road that winter was the decedent in this case, Robert Guinn. Guinn resided at 18-mile Chena Hot Springs Road, and his occupation as an airlines operations agent in Fairbanks required him to drive the highway twice a day, seven days a week. Customarily Guinn would work an eight-hour shift from the early afternoon until 11:00 or 11:30 in the evening, after which he usually remained in town to pay a social visit on friends or pursue his hobby as a musician. The decedent would retrace his route along the Chena Hot Springs Road to his home at two or three o'clock each morning.

The congestion caused by the parked vehicles and snow accumulation along the road prompted a number of complaints to the State Troopers. In response to one such complaint, Trooper David Kaiser was dispatched to the Chena Hot Springs Road on December 9, 1970. He inventoried the first 13 miles of the highway and found a total of seven vehicles parked along it. Among them was a Ford flatbed truck on the north side of the road in the westbound lane. This truck extended eight feet into the traveled portion of the road, and the state had plowed snow around the vehicle, creating an additional two-foot berm. The truck was virtually covered with snow and quite difficult to see at night. It had been

at that location for at least three weeks prior to the trooper's inventory.

Trooper Kaiser contacted Sam McGee, who claimed responsibility for the truck (although it was actually owned by his son) and stated that he was in the process of removing it from the road. The trooper advised McGee that unless it was removed the vehicle would be impounded, but he took no further action. Later that day McGee was incarcerated in Fairbanks on a misdemeanor charge and was unable to effectuate the removal of the flatbed truck.

Early on the morning of December 11, 1970, Robert Guinn was found dead in the wreckage of his automobile at approximately Mile 10½ of Chena Hot Springs Road. Guinn's auto had collided with the McGee truck as he was driving east from Fairbanks toward his home. A reconstruction of the accident revealed that at the time of impact Guinn's vehicle had left the eastbound lane and had been traveling in the middle of the road, with three-fourths of the vehicle located to the left of the centerline. Expert testimony presented at trial conflicted, placing the speed of the Guinn vehicle at the moment of impact somewhere in the range of 36 to 75 miles per hour. An autopsy disclosed alcohol levels in the blood and urine which would normally have required the consumption of three bottles of beer or three standard alcoholic drinks. Guinn had also eaten not long before the accident.

An action was commenced by appellee Mary Guinn, administratrix of the decedent's estate, alleging that the death of Robert Guinn was proximately caused by the negligence of Mack McGee, the owner of the truck, and the negligence of the State of Alaska. McGee was asserted to have been negligent in parking his vehicle where he did and leaving it at that location. The State was allegedly negligent in failing to remove or have removed the vehicle and for maintaining the highway in a negligent manner. The administratrix sought damages for herself as the surviving widow and on behalf of Celeste Guinn as a surviving daughter, for those items compensable under the terms of the Alaska Wrongful Death Statute, AS 09.55.580. McGee and the State denied that they were negligent and asserted that the decedent's death was proximately caused by his own contributory negligence.

A non-jury trial was had in the superior court. In a memorandum decision the superior court found that the negligence of each defendant had been a proximate cause of the death of Robert Guinn and that Guinn had not been contributorily negligent. The superior court awarded damages jointly and severally against McGee and the State in the amount of $898,623, of which $654,398.58 was attributed to the surviving spouse and $244,224.42 was attributed to the surviving daughter.

The State of Alaska now pursues this appeal, raising numerous specifications of error. McGee has not appealed.

*The Finding of Breach of Duty by the State.*

The superior court found that the State had a duty to exercise reasonable care in maintaining the Chena Hot Springs Road and that it had breached that duty at the time of the accident. Appellant challenges the finding that it had breached the duty of due care, contending that the evidence established that the road was reasonably safe for drivers exercising ordinary care.

 The question whether the duty of due care has been breached is ordinarily a question for the finder of fact.[1] The finding of breach by the judge in a trial without jury will not be disturbed by this court unless it is "clearly erroneous."[2] It is well established that a finding is clearly erroneous only when, although there may

1. *Wilson v. Sibert*, 535 P.2d 1034 (Alaska 1975); *Lee v. State*, 490 P.2d 1206 (Alaska 1974); *Hatch v. Ford Motor Co.*, 163 Cal. App.2d 393, 329 P.2d 605 (1958).

2. Alaska R.Civ.P. 52(a); *Kaatz v. State*, 540 P.2d 1037, 1041 (Alaska 1975); *Larman v. Kodiak Elec. Ass'n*, 514 P.2d 1275 (Alaska 1973).

be evidence to support it, the court is left with the definite and firm conviction on the entire record that a mistake has been committed.[3]

 In *State v. Abbott*, 498 P.2d 712, 724–26 (Alaska 1972), this court announced that the State of Alaska has a duty to exercise reasonable care to maintain Alaska's roads in a safe condition.[4] This duty of care to users of the highway is defined by ordinary negligence principles.[5] In *Abbott* we approved the description of that duty set forth in the Restatement (Second) of Torts § 349, comment *b* (1965):

> The duty of maintaining a highway in a condition safe for travel . . . includes not only a duty to maintain the surface of the highway in a condition reasonably safe for travel, but also a duty of warning the traveling public of any other condition which endangers travel, whether caused by a force of nature, such as snow and ice, *or by the act of third persons,* such as a ditch dug in the sidewalk or roadway or *an obstruction placed upon it.* (emphasis added)

The duty would also encompass the obligation to repair or remove such obstructions where failure to do so would expose travelers to an unreasonable risk of harm.

 The *Abbott* opinion also set forth the proof necessary to establish that the State's conduct fell below the duty of due care:

> In order for a plaintiff to show that the state exposed him to an *unreasonable* risk of harm he would have to demonstrate that the likelihood and gravity of the harm threatened outweighed the utility of the state's conduct and the burden on the state for removing the danger.[6]

It is our conclusion that there was ample evidence to support the superior court's determination that the State had been negligent.

. The likelihood of the physical injury to a motorist attributable to the encroaching McGee truck was not insubstantial. Appellant concedes that the truck occupied at least one-half of the westbound lane, and evidence adduced by appellee supports the trial judge's conclusion that the truck intruded eight feet into the 11-foot wide lane. Testimony further showed that the State's road plowing operation augmented the existing hazard by compacting an additional two-foot berm of snow around the truck. Several witnesses testified that the truck was virtually covered with snow and very difficult to see at night. There was also evidence that the road surface was extremely slick. At least three witnesses testified to near collisions at the scene of the protruding, buried truck, and others detailed the circumstances which led them to conclude that the situation was "hazardous." Thus, we are of the opinion that there was more than sufficient evidence to support the trial judge's conclusion that the McGee truck constituted a "serious hazard."

The superior court found that the truck had been parked on Chena Hot Springs Road for at least three weeks prior to the accident. The testimony of at least three witnesses goes to establish that fact. There was evidence adduced that, prior to the accident, as many as six motorist complaints were filed with the state troopers drawing the hazardous condition of the road to their attention. The first of these was apparently lodged two weeks prior to Guinn's death.[7]

---

3. *Kaatz v. State*, 540 P.2d 1037, 1041 (Alaska 1975); *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972); *Alaska Foods, Inc. v. American Manufacturer's Mut. Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971).

4. *See also Kaatz v. State*, 540 P.2d 1037, 1042 (Alaska 1975); *State v. I'Anson*, 529 P.2d 188, 195 (Alaska 1974).

5. *State v. Abbott*, 498 P.2d 712, 724 (Alaska 1972).

6. *Id.* .at 725 (footnote omitted, emphasis in original).

7. The trial court could reasonably have inferred that the State had even earlier notice of the hazard posed by the McGee truck, inasmuch as one of plaintiff's exhibits evi-

**536**

From these considerations the trial court was entirely warranted in concluding that a reasonably prudent person in the State's position would have foreseen a real probability of significant harm to a motorist on the Chena Hot Springs Road if the McGee truck was left in its dangerous location for any substantial length of time. It has been said that conduct is negligent only if it creates an unreasonable risk of harm to a class of persons which includes the plaintiff and subjects that class to the hazard which ultimately injures the plaintiff. In other words, the law of negligence protects only from foreseeable risks of harm.[8] Under the circumstances of this case, we hold that the trial judge properly concluded that the McGee truck posed for motorists traveling in either direction on Chena Hot Springs Road a very real risk of grave harm.[9]

The State's response to this situation was limited to the investigation conducted by Trooper Kaiser on December 9, 1970. No further inquiry was made to determine whether the trooper's directive to remove the vehicle had been obeyed. It would appear that there was very little justification for the State's providing such a delayed and limited response to the situation on Chena Hot Springs Road, inasmuch as the Deputy Commissioner of Public Safety testified that the State was having no difficulty impounding vehicles that winter. There had been no measurable snowfall since late November, and there was testimony that another abandoned vehicle on Chena Hot Springs Road had been cited and impounded by the police four days before the accident in question. Nor does it appear that a prompt and forceful response by state authorities would have constituted an undue burden. The State maintains no equipment for removal of vehicles but employs various private companies for that task. There is no cost whatever to the State as a fee is assessed against the owner of each impounded vehicle. Moreover, 13 AAC 02.345(b), a regulation promulgated by the Commissioner of Public Safety, mandates the removal of any vehicle parked on a highway constituting an obstruction or hazard.[10] This is certainly indicative that the burden of impounding a vehicle is not an excessive one.[11] Furthermore, there was testimony from the Deputy Commissioner of Public Safety that, as to a parked vehicle which encroached on a public highway but did not constitute an "obstruction or hazard" within the meaning of the regulation, proper police procedure would have been to impound the vehicle within a week after its discovery.

From this abundance of evidence the superior court drew its conclusion that the State breached its duty of due care by exposing the decedent to an unreasonable risk of harm. In its findings the court particularly emphasized facts similar to those stressed in *State v. Abbott,* 498 P.2d 712, 725 (Alaska 1972): the dangerousness of the hazard, the length of time it remained unpoliced, the ample notice received by the authorities, their capacity to eliminate the

---

dence that over 50 inches of snow fell in the Fairbanks area during the second half of November, 1970. A state employee charged with plowing roads north of the city testified that it was his practice to plow around the McGee truck. Inasmuch as his duties required him to patrol the road frequently that winter, the state employee presumably had notice of the McGee truck shortly after it had been abandoned. The employee stated that he could not recall specifically notifying his superiors of the hazard posed by McGee's vehicle, but that a frequent response to such reports was "a shrug of the shoulders."

8. Restatement (Second) of Torts §§ 281, 430 comment a (1965); *Larman v. Kodiak Elec. Ass'n,* 514 P.2d 1275, 1280 (Alaska 1973).

9. *Cf. Leigh v. Lundquist,* 540 P.2d 492, 495 (Alaska 1975).

10. 13 AAC 02.345(b) provides in full:
When a police officer finds an unattended vehicle parked, stopped or standing along or upon a highway, bridge, causeway or in a tunnel where the vehicle constitutes an obstruction or hazard to traffic, the officer shall impound and remove the vehicle to the nearest garage or other place of safety.

11. *Cf. State v. Abbott,* 498 P.2d 712, 725 n. 39 (Alaska 1972).

hazard, and their inadequate response in light of that capability. We cannot say that the superior court's finding of negligence on the part of the State is clearly erroneous.

The State further argues that the trial court "totally ignored" the evidence adduced at trial concerning Trooper Kaiser's actions on December 9, 1970, which evidence established that the trooper acted in a reasonable, prudent, and non-negligent manner. The policy of the state authorities was to impound a parked vehicle only in those instances when the vehicle created a "hazard" to the motoring public. The decision whether a particular vehicle constituted a hazard was left to the discretion of the investigating trooper, and his decision depended upon a number of factors including the volume of traffic at the site, the width and nature of the roadway, and its proximity to an intersection. Trooper Kaiser's judgment was that impoundment of the McGee truck was not warranted because it was situated on a straight section of rural road in a position that afforded good visibility from either direction. Furthermore, it did not appear necessary to impound because Sam McGee had assured the trooper that he would remove the vehicle. The State argues that, in light of the position of the vehicle and McGee's promise to remove it, the likelihood of harm to any traveler arising from the McGee truck appeared extremely remote and that, therefore, Kaiser acted with reasonable care.

 It is appropriate to recall that "[n]egligence is conduct, and not a state of mind." [12] The standard imposed is an external one and negligence may be found where the actor has considered the possible consequences of his conduct fully and has exercised his own best judgment. [13] Even

if the superior court had looked only to the events subsequent to the complaint received on the morning of December 9, 1970, its finding of negligence on the part of the State is sustained by the evidence. The State's response to the complaint was essentially to exact a promise from Sam McGee that he would undertake to remove a total of three vehicles stranded on Chena Hot Springs Road. According to the testimony, another motorist complained the next day at the troopers' headquarters that abandoned vehicles still posed a hazard to traffic on the road. This should have alerted the State to the possibility of continuing danger. Even if Trooper Kaiser made a good faith decision that the McGee truck did not constitute a "hazard" requiring immediate removal under 13 AAC 02.-345(b), it was incumbent upon the State to ensure that the vehicle was removed within a reasonable period of time. In view of the dangerous position of the truck and the fact that removal was eminently feasible once undertaken, [14] the State was under a duty to rectify this particular situation with reasonably prompt dispatch. In *Kaatz v. State,* 540 P.2d 1037, 1042 (Alaska 1975), this court sustained the trial judge's view that, under the circumstances of that case, a delay of five hours in setting out to correct a hazardous road condition was too long. In this case the State had at least 38 hours to ensure that motorists were in some manner safeguarded from the hazards on Chena Hot Springs Road. The record shows no clear error in the trial judge's conclusion that the State's failure to fulfill that responsibility constituted negligence.

 The State, in seeking to reverse the trial court, also stresses language found in this court's decision in *State v.*

12. Terry, *Negligence,* 29 Harv.L.Rev. 40 (1915).

13. W. Prosser, Law of Torts § 31, at 145 (4th ed. 1971).

14. Evidence was adduced that the day after the Guinn accident all the vehicles parked

along the Chena Hot Springs Road were removed. In *Kaatz v. State,* 540 P.2d 1037, 1043 n. 5 (Alaska 1975), this court held that evidence of subsequent repairs was admissible to show the feasibility of remedying a hazardous condition prior to an accident.

*l'Anson*, 529 P.2d 188, 195 n. 31 (Alaska 1974), to the effect that

> . . . it is the duty of the highway department to construct and maintain the highways . . . reasonably safe for a traveler himself exercising ordinary care; a highway will be deemed safe within these requirements *if it may be negotiated successfully by all but the very reckless and careless drivers*, there being no obligation to construct and maintain highways so as to insure the safety of such drivers. (emphasis added)

It is the State's position that because every witness who testified at trial had been able to negotiate around the hazard without accident, this conclusively established that the road had been maintained in a non-negligent fashion.

▇▇ We believe this contention must be rejected. The testimony of those who had driven the road that winter was replete with references that extreme caution was required to travel safely through the hazardous section of the roadway. When questioned why he had not been involved in a collision, one motorist responded, "Maybe it's just luck." The State cannot be permitted to rely upon the sharpened skills and good fortune of passing motorists to discharge its duty of due care to the driver exercising ordinary care.

*Proximate Cause.*

▇▇ The State next contends that the trial judge erred in finding that the negligence of the State was a legal or proximate cause of the decedent's injuries. The trial court observed that the accident would not have occurred but for the presence of the McGee truck on the highway and specifically ruled that its presence was "one of the proximate causes of the damage and ultimate death of Robert Guinn."

The proper standard for review of the finding of proximate causation is once again the "clearly erroneous" standard of Alaska Rule of Civil Procedure 52(a).[15]

In *City of Fairbanks v. Nesbett*, 432 P. 2d 607, 610 (Alaska 1967), another highway accident case, this court framed the issue of proximate cause as whether any negligence on the defendant City's part was "a substantial factor" in bringing about Nesbett's injury, and whether the conduct of a third party involved was a superseding cause relieving the city of liability. In resolving the proximate cause issue, we adopted the criteria articulated in Restatement (Second) of Torts § 431 (1965), which provides:

> The actor's negligent conduct is a legal cause of harm to another if
>
> (a) his conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

In *Nesbett* we also embraced the idea expressed in Restatement (Second) of Torts § 430, comment *d* (1965):

> It is not necessary for the actor's conduct to be 'the' legal cause of an injury for liability to attach to the actor. It is only necessary that such conduct be 'a' legal cause.[16]

The meaning of the term "substantial factor" was elucidated in *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972), where Justice Erwin, writing for the court, said:

> Normally, in order to satisfy the substantial factor test it must be shown *both* that the accident would not have happened '*but for*' the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it.[17]

---

15. *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972).

16. 432 P.2d at 610–11 (footnote omitted).

17. 498 P.2d at 727 (footnote omitted, emphasis added). This analysis was derived from comment *a* to § 431 of the Restatement. It should be noted that Restatement (Second)

The State's first contention in regard to the proximate cause issue is that its failure to impound the McGee truck was innocuous until Guinn acted upon it by leaving his lane of travel and that, under the terms of the Restatement, that failure cannot be considered a substantial factor of causation. The State specifically relies upon Restatement (Second) of Torts § 433(b)(1965), which directs:

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> . . . . . .
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; . . . .

However, the evidence in this case establishes the conclusion that the situation, prolonged if not created by the State's negligence, was anything but "harmless." The McGee truck was, by its mere location, a continuing hazard to motorists using the Chena Hot Springs Road. A number of persons went so far as to express that opinion to the authorities charged with policing the highways. Although Guinn's movement down the road was surely a cause of the accident, the presence of the encroaching McGee truck was so important in the chain of events that reasonable men would have to regard it as a cause and attach responsibility to it. Therefore, a finding that the truck was a substantial causal factor, one of the prerequisites to proximate cause, was entirely warranted.

The State's second contention going to the issue of proximate cause is that the risk that the decedent would drive left-of-center of the road and strike the stationary McGee truck was not foreseeable. Since negligence presupposes foreseeability of the risks engendered, the State insists that it cannot be held liable for the harm that befell the decedent.

We think this argument goes not to the trial court's finding of proximate cause but to the question whether the State's conduct was negligent. It has been previously stated that the law of negligence protects only against foreseeable risks of harm.[18] The trial court was evidently of the view that one of the foreseeable hazards created by the State's inaction was the possibility of an eastbound motorist colliding with the McGee truck. The record supports such a conclusion. Inasmuch as other evidence showed that the truck substantially encroached upon the westbound lane and that it was nearly invisible at night, a reasonable man could well have concluded that there was a foreseeable and very real risk the McGee truck would be struck by a vehicle coming from the west.[19]

*Contributory Negligence.*

At trial the State advanced several lines of argument that Guinn's conduct constituted contributory negligence and barred recovery in this matter.[20] It was contend-

---

of Torts § 433 (1965) lists some further factors in determining whether an actor's conduct is important enough to be considered a "substantial factor."

18. *See* text accompanying footnote 8, *supra.*

19. Appellant cites in support of its argument two New York decisions, *Rasher v. State*, 3 Misc.2d 324, 154 N.Y.S.2d 621 (Ct.Cl. 1956), *appeal dismissed*, 7 A.D.2d 954, 182 N.Y.S.2d 1018 (App.Div.1959), and *Gladstone v. State*, 23 A.D.2d 593, 256 N.Y.S.2d 493 (App.Div.1965). These decisions consider the foreseeability of the harm to the plaintiff mo-

torists in those cases. They have no bearing on the question of proximate cause. Moreover, since each deals with the likelihood of the peculiar pattern of contingencies occurring in that particular case, the opinions are of little relevance on the question of breach of duty in this matter.

20. This case was tried before our decision in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), which abolished the defense of contributory negligence in favor of principles of comparative negligence.

ed that Guinn had been operating his vehicle while suffering from mental fatigue and alcoholic intoxication. The State attempted to prove Guinn was driving at an unreasonably high rate of speed. Another theory was that Guinn's unexcused violation of a highway traffic regulation, 13 AAC 02.050, established Guinn's negligence as a matter of law. Finally, since it was undisputed that the decedent had traveled Chena Hot Springs Road numerous times, the State argued that Guinn was chargeable with knowledge of the exact location of the McGee truck and was, as a matter of law, contributorily negligent in failing to avoid it. The superior court rejected all these theories of contributory negligence.

With respect to the State's theory that Guinn was chargeable with knowledge of the location of the McGee vehicle, the decedent was chargeable with knowledge of the hazard's location only if a reasonable man with Guinn's driving experience would have remembered the hazard of the McGee truck on the night in question.[21] The trial court's decision not to attribute knowledge of the vehicle's location to Guinn was announced in a cursory manner:

> It may very well be argued that Mr. Guinn was charged with knowledge of the exact position of the McGee truck on the night in question and that he should have avoided it being charged with such knowledge. The Court does not consider this argument persuasive. There were a number of vehicles, their various positions changed from time to time, along the road as weather conditions changed.

In support of its conclusion, the trial court pointed to the testimony of two witnesses. The testimony of Larry Ballard was to the effect that a number of persons, including himself, were forced to park on Chena Hot Springs Road that winter; however, that testimony contained nothing relevant to the issue whether a frequent motorist of the road would remember the location of those vehicles. Mary Guinn's testimony was also quite general, tending to prove there was a concentration of cars parked on the highway, but containing nothing with respect to a motorist's probable recollection of the placement of these vehicles.

The record does contain evidence relevant to this more particular issue. Herman Koeppen stated that he became accustomed to expecting a vehicle in front of the home of John Pike, a residence on the south side of the highway several hundred feet west of the McGee truck, but that he would occasionally forget about the McGee truck. Julius Carver testified that he knew where the Pike mailboxes and automobiles were situated and anticipated them because he drove the road daily. Jeff Evans related that he grew accustomed to the various hazards because of his daily travels over the road, and that after two months he became accustomed to the Pike mailbox reflectors. Donald Duffy testified that he anticipated the hazards on Chena Hot Springs Road and used the reflectors in front of the Pike home to affix the location of the McGee truck. This testimony was uncontradicted.

In support of its position, the State stresses the decisions in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), and *Mueller v. Sangamo Construction Co.*, 20 Ill.App.3d 602, 314 N.E.2d 700 (1974). *Mueller*, more directly on point, held that the undisputed facts of a highway accident established contributory negligence of the decedent as a matter of law. The court stressed that the decedent had twice passed over the same portion of the truck route, with the same hazardous conditions prevailing, during the previous week. Holding the decedent accountable for knowledge of the hazard, the court found there was no evidence from which a jury could conclude that his driving was reasonable and prudent under the circumstances. *Id.* at 703.

21. W. Prosser, Law of Torts § 32, at 158 4th ed. 1971).

■ The McGee truck was stationed on Chena Hot Springs Road for at least three weeks prior to Guinn's death. The decedent traveled the road daily; thus he passed the truck a minimum of 40 times before the collision. In making its ruling the trial court necessarily found that a reasonably prudent driver with this driving experience would not have remembered the hazard of the McGee truck. In light of the evidence in the case, we are of the view that such a finding was clearly erroneous. It was therefore error for the trial court to refuse to charge the decedent with knowledge of the location of the truck. Attributing this knowledge to the decedent, we further conclude that Guinn's negligence in the operation of his vehicle was established as a matter of law.[22]

We now turn to the effect of this holding. Appellee Mary Guinn moved at the outset of trial to strike the defense of contributory negligence and to adopt the rule of comparative negligence with respect to the conduct of the decedent. The court reserved ruling on the motion. All sides were aware of the appeal in *Kaatz v. State,* then pending before this court, and pains were taken to preserve the issue for appeal.

Although he reiterated an intention to do so, in fact the trial judge never ruled on the motion. In his decision the judge concluded that the State had failed to prove that the decedent's conduct was negligent. Nowhere is there any consideration of the question whether, had the State made out a case of negligence, that negligence would have completely barred recovery.[23]

■ It was, of course, nine months later in *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975), that the doctrine of contributory negligence was replaced with principles of pure comparative negligence. In *Kaatz* we announced guidelines that would permit limited retroactive application of the new rule of comparative negligence.[24] Rather clearly this case does not fall within those criteria.[25] Nevertheless, we are of the view that principles of comparative negligence should govern the recovery, if any, by appellee in this case. At trial the administratrix explicitly challenged the continued viability of contributory negligence and made the effort to preserve the question for appellate review in the event she lost. She did not, and before this court her primary concern has been the defense of the superior court's decision in her favor. Although the administratrix

22. It is therefore unnecessary to consider the other arguments advanced by appellant with respect to contributory negligence, and we decline to do so.

23. Elsewhere the court did state: "For the foregoing reasons, this Court finds that the Plaintiff, Robert Guinn, was not contributorily negligent." We do not view that as a ruling on appellee's motion to replace contributory negligence with principles of comparative negligence.

24. The relevant passage is found at 540 P.2d at 1050:

Lastly, we must determine the extent to which the rule we have announced today shall have application to cases other than those which are filed in the future. The rule will, of course, apply in the retrial of the case in which we have reversed the judgment today. It will also apply to any case in which the trial commences after the date of this opinion. In any case pending on direct appeal in which the application of the comparative negligence rule was re-

quested or asserted in the trial court, and in which the request or assertion was preserved as a ground for appeal, there shall be a retrial under the principle of comparative negligence. Our holding today will be applicable to any trial which has commenced, but has not been submitted for decision by the trier of fact, and in which prior to submission to the trier of fact for decision there has been a request or an assertion that the rule of comparative negligence should be applied.

25. Appellee points to the final clause of this language, arguing that *Kaatz* is applicable because there was a request for use of comparative negligence principles during the trial. Properly read, of course, the final sentence of the *Kaatz* remarks is not applicable inasmuch as this case was submitted to the trier of fact before the date of the *Kaatz* opinion. Since appellee did not preserve her request "as a ground for appeal," this case is not directly covered by any portion of the language in the *Kaatz* opinion.

did not file a formal cross-appeal challenging the trial court's failure to rule on her motion, she did urge in her brief that principles of comparative negligence apply in the event of a reversal. We conclude this is sufficient to bring this case under the regime of pure comparative neligence. To require of her anything more would be an overly technical approach. Thus, under the authority of our recent opinion in *Warwick,* we think the factual context of this record warrants the creation of an exception to *Kaatz.*[26] Therefore, the effect of the decedent's negligence should be governed in this case by the principles of comparative negligence adopted in *Kaatz* even though this case does not technically qualify under the criteria for retroactive application announced in that decision.[27] It is therefore necessary to remand this case to the superior court for a determination of the degrees of fault attributable to Guinn, the State and McGee. A new trial will not be required for this purpose, inasmuch as we believe that the trial judge can reach a fair resolution of this question by reference to the record and transcript, as well as to his own recollection of the evidence presented.

In summary, consideration of the State's arguments has led us to the following conclusions. Contributory negligence of the decedent was established as a matter of law. The effect of that negligence should be governed by the doctrine of comparative negligence. It is necessary that this case be remanded to the superior court for the purpose of attributing degrees of fault to the three parties in this litigation.

*The Evidentiary Rulings.*

Appellant has also challenged three evidentiary rulings by the trial court. Al-though we have already decided to remand this case for a further limited proceeding, it is necessary to consider these specifications of error. If the State can demonstrate prejudicial error, an entire new trial on the issue of liability will be required. However, appellant's arguments with respect to the evidentiary rulings are largely without merit.

*The Testimony of James Tate.*

██ During the course of the trial the State attempted to adduce the testimony of James Tate, a former State Trooper who had been assigned to investigate the Guinn accident. The State intended to elicit the measurements Tate had taken at the scene of the accident with respect to the respective positions of the vehicles involved. On voir dire the former trooper conceded that he held no recollection of the measurements independent of those figures on the accident report he had filed, although later he stated that the report had revived such a recollection.

The trial court received but later struck Tate's testimony, which had been limited to the accident measurements, under Alaska Rule of Civil Procedure 37(b).[28] The basis for this order was the State's failure to produce the trooper's notebook, from which the information on the accident report had been transcribed. Prior to trial an order had been entered requiring production of various trooper notebooks. The State's response had been that the former Trooper Tate's notebook was his personal property and not then under the control of the department. However, testimony elicited at trial established that, in fact, Tate had given the notebook to the department prior to his resignation, that it was never returned to him, and that the State apparently made no

---

26. *Warwick v. State ex rel. Chance,* 548 P.2d 384, 394 (Alaska 1976)'.

27. *Cf. Bachner v. Rich,* 554 P.2d 430 (Alaska 1976); *Sloan v. Atlantic Richfield Co.,* 546 P.2d 568, 569 (Alaska 1976).

28. Alaska R.Civ.P. 37(b) provides in part:
 If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just
 . . . ..

effort to locate it prior to trial. Although the superior court was of the view that the State's failure to produce the notebook was not in "bad faith" or "purposeful deception," it evidently felt the omission was serious. Since Tate's testimony was largely predicated on the accident report, which in turn was largely based on the missing notebook, the court concluded that the State's failure to comply with the discovery order warranted exclusion of the testimony.

The State argues that the trial court abused its discretion in imposing this sanction when there was no showing of wilful recalcitrance. It is true that in *Ketchikan Cold Storage Company v. State*, 491 P.2d 143, 148 (Alaska 1971), we said:

> Although Rule 37 does not in terms require showing of wilfulness before any of its sanctions come into play, we will not sustain an establishment-preclusion order relating to a central issue in a case absent a showing of wilful failure to comply.

In this case, however, no such devastating establishment-preclusion order was issued. The remedy selected by the trial court, far less drastic, was simply to preclude the State from making use of former Trooper Tate's testimony. The State remained free to establish the accident scene measurements by any other means it could. We have previously stated that a Rule 37 order will be reversed only when we are "convinced that the court below has exceeded a proper discretion in that the order imposed was too strict or was unnecessary under the circumstances." [29] The order in this case is neither too strict nor unnecessary.

The State next contends that the trial court's ruling precluded the State from adducing testimony from Tate concerning the weather and road conditions at the scene of the accident. The State's two offers of proof with respect to Tate's testimony made no mention of these matters; they indicated that the sole purpose of Tate's testimony was to establish measurements. This is ground enough to warrant a refusal to further consider this point.[30] Beyond that, there was ample uncontradicted testimony as to climatological conditions by other witnesses, so whatever Tate might have offered would have been cumulative. Assuming *arguendo* the exclusion was error, it was thus harmless error.[31] We conclude that the State's challenge to the exclusion of the Tate testimony is without merit.[32]

*The Truck Registration Statement.*

During surrebuttal late in the trial, McGee offered as evidence a 1972 Certificate of Registration which stated that at that time the weight of his truck was 6,260 pounds. This evidence contradicted the expressed assumptions of the State's and appellee's expert witnesses that the vehicle weighed 5,200 pounds. Appellee objected to the introduction of the certificate on the grounds that it should have been offered earlier and that it was incompetent. The trial court excluded the certificate, though it never clearly stated the rationale for its ruling. Apparently the court was in agreement with the view that the document should have been offered prior to or during the presentations by the expert witnesses. The State now argues exclusion of this evidence was error.

---

29. *Oaks v. Rojcewicz*, 409 P.2d 839, 844 (Alaska 1966), *quoting Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910, 915 (2d Cir. 1959).

30. 5 Am.Jur.2d *Appeal and Error*, § 604 (1962.)

31. *Groseth v. Ness*, 421 P.2d 624, 633 (Alaska 1966) ; *Mallonee v. Finch*, 413 P.2d 159, 164 (Alaska 1966).

32. Appellant also argues that the trial court erred in imposing the sanction it did because

the plaintiff did not demonstrate that she was prejudiced by the failure to produce. There is no support in logic or precedent for this proposition that a movant must demonstrate prejudice before securing sanctions under Rule 37. A litigant should not be forced to conjecture what evidence he might have obtained had the discovery order been satisfied; he is entitled to rely on that order to reveal precisely what evidence is available.

**544**

■ The registration certificate was hearsay evidence to prove the weight of the vehicle at the time of the accident. However, the certificate was an "official record" within the meaning of Civil Rule 44(b), which provides for the admissibility of certain public records.[33] On the other hand, McGee made no attempt to demonstrate compliance with the prerequisites to admissibility set forth in the rule. For example, there was no showing that a copy of the certificate had been delivered to appellee.[34] Consequently, we affirm the superior court's ruling.

### The Testimony of Captain Corning.

■ During trial appellant attempted to elicit testimony from its expert witness, Captain Edgar Corning, as to whether there had been sufficient distance after the Pike vehicle encroaching in the eastbound lane for a motorist to pass around the vehicle and return to the proper lane of travel before encountering the McGee truck. Appellee objected and the court sustained the objection on the grounds there was no foundation to warrant expert testimony as to this point. Although Corning had performed certain studies regarding safe passing distance, there was no showing that the conducted tests in any measure approximated the conditions—roadway width and conditions, visibility, vehicle speed, grading, and so forth—which confronted the decedent on the night in question. For this reason the trial court found the proposed opinion testimony of the witness "too speculative."

In reaching this conclusion the trial judge recalled the evidence previously adduced concerning the conditions on Chena Hot Springs Road. We find no error either in the superior court's conclusion reached or the method by which it was reached. The decision to exclude was well within the discretion we have afforded trial courts in controlling expert testimony. *See Grasle Electric Co. v. Clark*, 525 P.2d 1081, 1085 (Alaska 1974); *Burgess Construction Co. v. Hancock*, 514 P.2d 236, 237 (Alaska 1973).

### The Damage Award.

The trial court awarded a judgment totaling $898,623, plus interest at the rate of 6% since the time of the decedent's death until judgment and at a rate of 8% thereafter, plus costs and attorneys' fees of $75,000.[35] This award largely adopted the calculations of Dr. Richard J. Solie, a consulting economist retained by the appellee. In deposition testimony Dr. Solie calculated lost future earnings and other damages based on the assumption that the decedent would be promoted to a dispatcher position by his employer, Wien Air Alaska, effective September 1, 1974. The trial court accepted that assumption and the calculations based thereon. Appellant argues the resulting award was defective in several respects, but we find only one of its points meritorious.

■ We have said that " . . . a determination of damages by the trial court is a finding of fact which will not be disturbed on appeal unless clearly

---

33. *Cf. Havas v. 105 Casino Corp.*, 82 Nev. 282, 417 P.2d 239 (1966).

34. Alaska R.Civ.P. 44(b)(2) provides:
Any writing admissible under subdivision (1) shall be received only if the party offering such writing has delivered a copy of it or so much thereof as may relate to the controversy, to each adverse party a reasonable time before trial, unless the court finds that such adverse party has not been unfairly surprised by the failure to deliver such copy.

35. The court's calculation of damages was as follows:

$ 37,021.00—lost net earnings between death of Guinn and August 31, 1974.

$702,977.00—lost net earnings after September 1, 1974.

$129,000.00—loss of assistance, services and consortium to wife.

$ 29,625.00—loss of services, counsel, etc. to daughter.

―――――――

$898,623.00

erroneous." [36] However, this court will also intervene when the trial court's calculations are in disregard of a rule of law pertaining to damage measures. [37] As we said in *Morrison v. State,* 516 P.2d 402, 405 (Alaska 1973):

> Certainly in many cases, as is true in this case, some items of damages cannot be fixed with mathematical precision. In those instances the trial judge is necessarily forced to estimate and as long as he follows the correct rules of law, and his estimation appears reasonable and is grounded upon the evidence, his finding will remain undisturbed.

■ The trial court's award of $37,021 for past earnings lost from the date of the accident to August 31, 1974, was based entirely on the deposition testimony of Dr. Solie. In calculating Guinn's past net lost earnings, Solie merely computed Guinn's salary, accounting for fixed wage increases, and deducted the decedent's estimated personal consumption. Appellant contends there was error in this methodology. *Beaulieu v. Elliott,* 434 P.2d 665, 673 (Alaska 1967), expressly requires the deduction of income taxes that the decedent would have incurred on wages earned from the date of his death to trial. Appellee concedes that no such deduction was made in this case and that error was thus committed. It is, therefore, necessary to remand to the trial court with direction to compute the income tax that decedent would have paid and to deduct this sum from the award.

The State's next argument bears on the calculation of future net earnings loss after Guinn's hypothesized promotion to dispatcher. In cumulating the aggregate loss Dr. Solie relied upon, the then current union wage scale for that position to determine Guinn's monthly wage. The scale provided for small, automatic increases in the wage rate keyed to the employee's length of service with the company. The beginning dispatcher salary of $1408 per month is increased at six or 12-month intervals until a maximum wage rate of $1881 per month is attained at the end of the 10th year of employment. The seniority increases were reflected in Dr. Solie's calculations.

Appellant contends that it was error for the trial court to adopt calculations which recognized any form of wage increase. Primary reliance is placed on *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967), in which this court departed from the majority practice of reducing to present value damage awards in personal injury and wrongful death cases. In *Beaulieu* we held that the rate of depreciation in the value of the dollar, attributable to ongoing inflation, approximately offsets the financial windfall otherwise attributable to a failure to discount to present value. *Id.* at 671. In support of this view the majority opinion by Justice Dimond added:

> Our conclusion is fortified by another factor which also may not be ignored. This is the factor, relied upon by the trial judge, which involves wage increases that the injured plaintiff might have expected to receive in the future had he not been injured. It is a matter of common experience that as one progresses in his chosen occupation or profession he is likely to increase his earnings as the years pass by. In nearly any occupation a wage earner can reasonably expect to receive wage increases from time to time. This factor is generally not taken into account when loss of future wages is determined, because there is no definite way of determining at the time of trial what wage increases the plaintiff may expect to receive in the years to come. However, this factor may be taken into account to some extent when considered to be an off-setting factor to the result reached when future earnings are not re-

---

36. *Morrison v. State,* 516 P.2d 402, 405 (Alaska 1973).

37. *Id.*; *City of Fairbanks v. Smith,* 525 P.2d 1095, 1096 (Alaska 1974); *Beaulieu v. Elliott,* 434 P.2d 665, 676 (Alaska 1967).

duced to present value. Thus, if there is any fear that failure to reduce the present value will give the plaintiff more than he is entitled to because of the possibility of his making successful investments of the sum awarded at returns greater than the annual rate of inflation, such fear is obviated by the fact that the award may well be deficient in that it does not take into account probable wage increases that the plaintiff would ordinarily be expected to receive in the future. [38]

Appellant argues that, having in this case specifically accounted for future wage increases, the trial court granted an inflated award when it failed to discount to present value.

Dr. Solie's testimony reveals that he was well aware of the guidelines set forth in *Beaulieu v. Elliott,* and that he attempted to follow those principles in his calculations. He made no projection of a general increase along the entire wage scale, nor did he project specific rewards for the decedent other than those step-wage increases strictly attributable to Guinn's added years of service. The question raised is whether the decision in *Beaulieu* directs the exclusion of these step-wage increases as well. Dr. Solie believed *Beaulieu* was inapplicable, and we agree.

■ Particularly significant in the *Beaulieu* remarks is the sentence most succinctly expressing our rationale: "This factor is generally not taken into account when loss of future wages is determined, because there is no definite way of determining at the time of trial what wage increases the plaintiff may expect to receive in the years to come." *Id.* at 672. It is apparent that there we were focusing on those non-scheduled salary increases and

bonuses that are granted as one "progresses in his chosen occupation" in terms of skill, experience and value to the employer. It is well known that there are almost annual wage increases in practically all Alaska employment categories. The common practice being that when union contracts are renegotiated, some increases are included. It is with reference to this type of increase that *Beaulieu's* remarks were addressed. Automatic step increases keyed to length of service are by their very nature certain and predictable at the time of trial, and they should be considered in a judicial estimation of lost future earnings. The goal of the estimate is to ascertain as accurately as possible the lifetime earning prospects of the decedent at the time of his demise. To disregard certain and fixed wage increases would be to distort the very picture one is seeking.[39] Appellant's reliance on the holding in *Beaulieu* is thus misplaced. There was no error with respect to the calculation of future net earnings loss.

■ Appellant's next specification of error goes to the method by which Dr. Solie and the trial court calculated the deduction of Guinn's personal consumption. For each of the 38 remaining years in the projected career of the decedent, Dr. Solie determined an annual income figure expressed in 1974 dollars, derived from the union wage scale discussed previously. From that figure he deducted an amount attributable to the personal consumption of the decedent, properly reasoning that the remainder constituted the annual income which would have been directly and indirectly available to the survivors as support. He then totalled these "support figures" for every year, obtaining a grand sum expressed in 1974 dollars. By refusing to discount to present value the support fig-

---

38. 434 P.2d at 671–72.

39. The State does not seriously contest the computation of Guinn's earnings based on his promotion to a dispatcher position by September 1, 1974. It was permissible for the trial court to consider promotions of this type upon evidence being introduced to indicate that such a promotion was likely to occur. This is not the type of wage increase to which reference was made in *Beaulieu* as offsetting the failure to reduce the sum allowed for loss of future earnings to its present value.

ure for each year prior to the final summation, Dr. Solie compensated for the anticipated inflation in the years ahead in accordance with *Beaulieu v. Elliott*.[40]

The State's argument with respect to personal consumption appears to go to the adequacy of the figure selected by Dr. Solie as his estimate of Guinn's personal consumption. Resort was made to consumption figures furnished by the U. S. Department of Labor, Bureau of Labor Statistics. A comparison of the estimated household budget costs of a family with Guinn present and with him absent yielded a consumption figure attributable to the decedent. The State stresses that the dollar figure selected represents only 16% of the annual family income, arguing that the figure is unreasonably low because the methodology failed to consider decedent's personal expenses as well as household expenses attributable to his presence. A more appropriate figure, according to appellant would have been one-third to one-half of Guinn's annual earnings.

No light has been shed by either side as to the scope of the "household budget" projected by the Department of Labor, which was the basis of the court's adopted calculations. Consequently, one cannot know whether the omitted element of Guinn's personal expenses is significant. Logically, it was the obligation of the State in the first instance to challenge the accuracy of the appellee's expert testimony at the trial level. No such challenge was made. Inasmuch as it does not appear that it was clear error to rely on the methodology to which Dr. Solie testified, further consideration of appellant's claim is not warranted.

Finally, the State argues that in this case the trial court did not ". . . fix the award at a sum which will fairly compensate for the injury resulting from the death . . .", as required by the terms of AS 09.55.580(c), a provision of the Alaska Wrongful Death Act. The State finds in *Morrison v. State*, 516 P.2d 402 (Alaska 1973), a requirement that the fairness of a wrongful death award is to be tested by reference to the decedent's future earning power. Specifically, the award is to be evaluated as if it were the principal of an annuity contract, for the purpose of determining the annual income-generative capacity of the award.[41]

However, *Morrison*, properly read, requires no such comparative evaluation, nor do we think such an analysis appropriate in light of our previous decision in *Beaulieu v. Elliott*.

Affirmed in part and remanded for further proceedings in conformity with the foregoing.[42]

CONNOR, J., not participating.

ERWIN, Justice (concurring).

I concur in all respects with the majority opinion in this case. However, I wish to note further that I believe that the passage of time has made apparent the need for certain adjustments in the rules announced in *Beaulieu v. Elliott*[1] for the award of personal injury damages. In my view the failure to reduce a wrongful death award for impairment of earning capacity by an amount equal to the estimated taxes which would have been payable by the wage earner puts the family of the deceased in the anomalous position of receiving more mon-

---

40. We note that appellant has not contended that in determining damages for future earnings deductions must be made for income taxes. Since the issue is not raised in the instant appeal, we deemed inappropriate any comment on the merits of such contention.

41. This "annuity analysis" was used in one California decision cited by appellant, *Lucas v. Southern Pacific R.R.*, 19 Cal.App.3d 124, 96 Cal.Rptr. 356 (1971).

42. We are cognizant that this court's adoption of the doctrine of comparative negligence in *Kaatz v. State*, 540 P.2d 1037, 1042 (Alaska 1975), will require amendment of Alaska's Uniform Contribution Among Tortfeasors Act (AS 09.10.010).

1. 434 P.2d 665 (Alaska 1967).

ey for the death of the wage earner than they would have received had he lived.[2]

A similar problem is presented by the failure to realistically assess the personal consumption reduction for the particular deceased wage earner. However, since I view this as a matter of proof to be presented at trial, the trial judge in the case at bar was correct in computing the award based on a 16% personal consumption figure since that was the only evidence presented on the issue.

---

2. Comment "Wrongful Death Damages," 47 Mississippi Law Journal 173, 197–203 (1976). *See also United States v. English*, 521 F.2d 63 (9th Cir. 1975) ; *Turcotte v. Ford Motor Co.*, 494 F.2d 173, 184–186 (1st Cir. 1974) ; *Tenore v. Nu Car Carriers, Inc.*, 67 N.J. 466, 341 A.2d 613, 623–629 (1975) ; *Floyd v. Fruit Industries, Inc.*, 144 Conn. 659, 136

A.2d 918, 925–926 (1957) ; *Dempsey v. Thompson*, 363 Mo. 339, 251 S.W.2d 42, 44–46 (1952).