**STATE of Alaska, Appellant,**

v.

**Arnold HARRIS, Appellee.**

No. 6773.

Supreme Court of Alaska.

April 29, 1983.

William G. Mellow, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for appellant.

David Shimek, Shimek & Peabody, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SHORTELL, Judge.[*]

OPINION

SHORTELL, Judge.

This appeal presents the question whether evidence of future wage increases guaranteed by a union contract may be admitted in a personal injury action on the issue of the plaintiff's diminished earning capacity.

At trial, the plaintiff, Arnold Harris, offered the expert testimony of Dr. Solie, a professor of economics, on the issue of lost earning capacity. Three methods of com-

---

[*] Shortell, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 16 of the Constitution of Alaska.

putation were offered into evidence.[1] Dr. Solie explained that Method A determined the earning capacity of Mr. Harris, a carpenter by trade, as a typical union carpenter in Alaska. Method A took into consideration the existing carpenters' union contract which provides for scheduled wage increases, at definite and certain rates, through July 1983. Over objection by the state, Dr. Solie was permitted to testify that as a union carpenter Mr. Harris could expect to receive the scheduled wage increases.

Dr. Solie's particular area of emphasis is labor economics. As a discipline, labor economics includes the study of labor-management relations, wage rate determinants and so-called wage theory. Dr. Solie also has on frequent occasions read and reviewed labor contracts. In his opinion, the carpenters' union contract wage increase clause was not in any way tied to "what happens to the future rate of inflation." On cross-examination, he stated further that the increases "are not pegged to longevity" with a particular employer, or to merit.[2]

The state disagrees with Dr. Solie's characterization of the wage increases; it identifies them as offsets to future inflation and argues that they were inadmissible evidence under our decision in *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967).

In *Beaulieu,* we held that the trier of fact should compute loss of future earning capacity without reduction to present value on the premise that inflation would approximately offset the rate of gain which the ordinarily prudent investor could be expected to make on a lump sum award. A further supporting rationale for our refusal to reduce such awards to present value was our feeling that the possibility of unduly high recoveries from failure to reduce to present value would be obviated by the offsetting effect of the rule which forbids consideration of speculative future wage increases.

In *State v. Guinn,* 555 P.2d 530 (Alaska 1976), we applied our reasoning in *Beaulieu* to an issue similar to that raised here. *Guinn* was a wrongful death action in which the decedent, at the time of his death, worked as an airlines operations agent for Wien Air Alaska. Expert testimony on lost future earnings was in part based on the current wage scale for a dispatcher's position to which it was assumed the decedent would be promoted. The wage scale provided for automatic increases in the wage rate keyed to the employee's length of service with his employer. Appellant contended that the trial court erred in adopting calculations which recognized any form of wage increase.

We held in *Guinn* that *Beaulieu* forbade consideration of speculative wage increases but permitted consideration of "[a]utomatic step increases keyed to length of service [which] are by their very nature certain and predictable ...." 555 P.2d at 546.

*Guinn* expresses the view that evidence of automatic wage increases, which are ascertainable and certain, should be con-

1. For ease of reference, the different methods will be labelled alphabetically. Method A is discussed in the text of this opinion. Method B looked to the earning capacity of the typical carpenter based on the average of all union and non-union carpenters in Alaska. Method C employed an age earning cycle projection into the future of Mr. Harris' actual past earnings experience. Methods B and C did not include reference to plaintiff's expectation of contractual wage increases.

2. Dr. Solie testified:
   I included future increases that are built into the carpenter's union contract ... there is ... an existing contract which has increases built-in up through 1983, so in that particular case there are some general increases built in through the year 1983. *One can't really call them inflationary increases, they're actually in an existing contract and they're not dependent upon what happens to inflation in the future.* [I]t's not unusual to find contracts which have what we call cost of living adjustment or Cola clauses which tie future increases to future changes ... in the consumer price index. That is not the case in this particular contract. *In this particular contract the wage rates for each of the ensuing periods are set forth explicitly and are not in any way tied to what happens to the future rate of inflation and to the future changes in the consumer price index and so on.* (Emphasis added).

sidered because it enhances the accuracy of lost future earnings projections. We stated:

> The goal of the estimate is to ascertain as accurately as possible the lifetime earning prospects of the decedent at the time of his demise. To disregard certain and fixed wage increases would be to distort the very picture one is seeking.

555 P.2d at 546.

The same rationale was used in *Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916 (Alaska 1977), to affirm the trial court's finding that evaluation of an injured plaintiff's future earning capacity should include calculations reflecting a particular wage increase which could be predicted with reasonable accuracy to occur within five years. In affirming the trial court's decision, we expressly limited *Beaulieu's* reference to wage increases:

> [T]o those attributable primarily to inflation and hold it has no application to merit increases shown with reasonable certainty as likely to occur separate and apart from increases in the general wage level.

568 P.2d at 937.

The record in this case does not, as the state suggests, show that the plaintiff's contractual wage increases were attributable primarily to inflation rather than other factors. Aside from a general objection to the evidence based on the assumption that the increases were attributable to inflation, the state presented nothing to contradict Dr. Solie's testimony that the increases were noninflationary. As Harris points out in his brief:

> [T]he only thing that can be known with certainty about the rationale for the increases contained in the contract is that they were negotiated through the collective bargaining process, and presumably are predicated upon all of the considerations inherent in such process, including the respective bargaining skills of the parties, the economic strengths of the parties at the time of negotiation, the anticipated economic strengths of the parties throughout the duration of the contract, anticipated increases in worker productivity by reason of increased skills or changing work methods or products, the perceptions of the parties as to the strength or weakness of the marketplace generally and the building trades specifically, and many other such factors.

As *Guinn* and *Sweat* clearly indicate with reference to evidence of future wage increases, reasonable certainty and specificity are the keys to admissibility. Plaintiff's future contractual increases were to occur independently of increases in the general wage level; they were fixed and certain; and they cannot, on the basis of the evidence presented, be said to have been attributable primarily to inflation. We hold, therefore, that the trial court did not err in admitting Dr. Solie's testimony.

We are also asked to reconsider *Beaulieu* to the extent that it permits damages to be awarded for impairment of future earning capacity without deducting an amount representing future income taxes. This issue arose in the recent case of *Yukon Equipment v. Gordon,* 660 P.2d 428 (Alaska 1983), where we chose to adhere to the rule in *Beaulieu.* Since there are no new arguments to consider, our opinion in *Yukon* stands.

The superior court decision is AFFIRMED.