## SOUTHERN RAILWAY COMPANY v. DAVIS.

1. Where a suit was brought by a woman to recover damages for a personal injury, and on the trial of the case she was not present. it was error for the court to allow a physician to testify that the reason she was not in the court-room was that she was very nervous and he thought it would have a depressing effect upon her to hear the testimony, but that he had not offered any suggestion that she should not be present, it nowhere appearing that she had in fact remained away from the court-room because of her condition or because of such opinion on the part of the doctor in reference thereto. The mere opinion of the doctor as to why he believed the plaintiff was not present, and as to the effect the hearing of the testimony might have upon her, was irrelevant.

2. Where, in an action to recover damages for a personal injury, the plaintiff alleged that she was entitled to recover "for pain and suffering, for doctor's bills and medicine," but on the trial no evidence was introduced to prove any amount of expense incurred for doctor's bills and medicine, it was error for the judge to charge, that, as to the "damages of the kind sued for in this case," there is no measure fixed by law, but the amount is left to be determined by the enlightened conscience of impartial jurors, where he did not instruct the jury that the suit for doctor's bills and medicine had been abandoned, or that these items were not included in the expression, "the kind sued for in this case," to which the rule of measurement announced in this charge was made applicable.

3. In an action for damages for a personal injury, based on negligence alone, and in which, under the pleadings and evidence, no question of wilfulness, wantonness, malice, oppression, or conscious indifference to consequences is involved, it is error to charge that "In every tort there may be aggravating circumstances either in the act or the intention, and in that event the jury may give additional damages either to deter the wrong-doer from repeating the trespass or as compensation for the wounded feelings of the plaintiff."

4. In a suit to recover damages for a physical injury causing partial loss of eyesight, nervousness, and inability to follow the previous vocation of the plaintiff, it was inapt to charge the jury that "In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff; in such cases no measure of damages can be prescribed except the enlightened conscience of impartial jurors." While damages on account of pain and suffering are to be measured by the enlightened conscience of impartial jurors, the charge above quoted was not strictly applicable to the case at bar, which involved physical injury.

5. Except as above indicated, none of the grounds of the motion were such as to require the grant of a new trial.

Argued February 10,—Decided June 24, 1909

Action for damages. Before Judge Martin. Muscogee superior court. April 17, 1908.

*Charlton E. Battle* and *Howell Hollis,* for plaintiff in error.

*T. T. Miller,* contra.

LUMPKIN, J. We deem it necessary to discuss only the ruling made in the 3d headnote. The plaintiff's petition alleged, that, at a place where two railroads crossed each other, a train on which she was a passenger was running upon one line when an engine approaching on the other road ran into it, causing an injury to the plaintiff. The ground of negligence alleged was that the engineer of the defendant company on the engine which caused the injury did not stop within fifty feet of the railroad crossing and did not approach it slowly, as required by law, but approached it at a high and dangerous speed, not making or attempting to make any stop whatever until the engine was run against the passenger-train in which the plaintiff was seated. It was alleged that the engineer was "grossly negligent" in this regard, and ran his engine "recklessly and without regard to law." The evidence on behalf of the plaintiff showed that the collision occurred at the crossing; that the train on which the plaintiff was a passenger was approaching it, as was also the engine of the defendant, and that the latter ran against the train and caused the injury. The train on which the plaintiff was a passenger was being backed over the crossing, an employee of the company, who described himself as a porter, being on the rear end with the conductor. The engineer was a witness for the plaintiff. On cross-examination he testified: "I suppose I could see the Southern Railroad as far as the Southern Railroad could see me." On re-examination he testified that the rear end of his train was from 240 to 300 feet dis-

tant from him, and that he thought, upon reflection, that the engineer upon the Southern Railway train could see the train on which the witness was before the latter could see the train on the Southern Railway, that he misunderstood the question, and that "'The way I was on my engine I couldn't see him at all; I meant as to my fireman, who was on the north side of the engine, the way the Southern train was coming; that's the side the Southern train hit me on." The porter, who was on the rear end of the train which was struck, testified, among other things, as follows: "I didn't know who was in charge of the Southern Railroad engine. I couldn't tell you what efforts, if any, he made to stop his train — that is, the Southern Railroad engine. I heard him blow for brakes as soon as he seen us, I reckon. He seen us and he blowed for brakes about that time. . . When I threw the switch, I couldn't see up the Southern Railroad track, and I couldn't see up the Southern track until I got right on the crossing, on account of that store there. Neither me or the fireman nor the Southern Railroad engineer could see each other, because of that store being there. .. . I couldn't see the Southern Railroad train until I was on the crossing, nor could the Southern Railroad train have seen us until we were on the crossing. Neither one of the trains stopped for that crossing on that day. The store that I have reference to is about ten or twelve feet from the railroad." The evidence of the conductor, who was on the rear end of the backing train with the porter, and who was also a witness for plaintiff, did not conflict with that above stated, nor was there any substantial difference on that subject. He said: "After I saw the freight-train coming, as I have stated, the accident could not have been avoided by any signal that I might have given the engineer; nor could my train have stopped before it got on the crossing, from the time we first saw the Southern train coming." The sole act of negligence on which the plaintiff's right of action rested was a violation, by the defendant's engineer, of the Civil Code, §2234, which declares, that, "Whenever the tracks of separate and independent railroads cross each other in this State, all engine-drivers and conductors must cause the trains which they respectively drive and conduct to come to a full stop within fifty feet of the place of crossing, and then to move forward slowly. The train of the road first constructed and put in operation shall have the privilege of crossing

first." It was alleged, and evidence was introduced to show, that the road on which the plaintiff was traveling was first constructed, and that the crossing was in the city of Columbus.

Various definitions have been given of negligence, among them being that it is the failure to exercise due care. Our own code declares that "Ordinary diligence is that care which every prudent man takes of his own property of a similar nature. The absence of such diligence is termed ordinary neglect." Civil Code, §2898. "Extraordinary diligence is that extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property. The absence of such diligence is termed slight neglect." §2899. "Gross neglect is the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property." §2900. These are different degrees of negligence as recognized in the law of this State. In some jurisdictions objection has been made to the use of the qualifying words, slight, ordinary, and gross, as applicable to negligence, and the courts have preferred to use the term ordinary neglect or negligence as applicable to a want of due care under the circumstances, maintaining that, at last, ordinary diligence, in the light of the circumstances, is all that is required of any man. Generally a court·can not instruct a jury that certain acts constitute negligence per se. But there is an exception in cases where a valid statute or municipal ordinance requires the performance or nonperformance of certain acts. *Atlanta &c. R. Co.* v. *Hudson,* 123 *Ga.* 108 (51 S. E. 29) ; *Southern Cotton-Oil Co.* v. *Skipper,* 125 *Ga.* 368 (8), (54 S. E. 110). It has·been declared that "The omission of specific acts of diligence prescribed by statute or by a valid municipal ordinance is negligence per se." *Central R. Co.* v. *Smith,* 78 *Ga.* 694 (3 S. E. 397). See also 5 Words & Phrases, 4764. This recognizes and characterizes such an omission as being negligence. Mere negligence and wilfulness are not synonymous terms. In Milwaukee & St. Paul R. Co. *v.* Arms, 91 U. S. 489 (23 L. ed. 374), where there was a head-end collision between railroad trains, the court charged the jury that if they found that the injury "was caused by the gross negligence of the defendant's servants controlling the train, you may give to the plaintiff punitive or exemplary damages." Mr. Justice Davis, delivering the opinion for the Supreme Court of the United States,

said: "'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence,' but, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employees of the company did not use the care that was required to avoid the accident. But the absence of this care, whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this, there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Nothing of this kind can be imputed to the persons in charge of the train; and the court, therefore, misdirected the jury." In the syllabus it was said that "Exemplary damages shall not be awarded for such injury, unless it is the result of wilful misconduct of the employees of the company, or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them." In *Southern Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E. 1000), it was held: "To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." In the opinion Mr. Justice Cobb said: "Mere negligence can never amount to such aggravating circumstances as to warrant the imposition of such damages; and this is true though the negligence be gross." This was said· in a case where the plaintiff claimed that she had sustained damage on account of having been negligently carried beyond the station to which she had paid her fare; that she had been compelled to ride in a coach filled with riotous and drunken soldiers; and that, in being taken from the car containing these disorderly passengers and being transferred to a returning train, she was for an unnecessary length of time negligently exposed to the weather upon the platform of the car. *Southern Ry. Co.* v. *O'Bryan,* 112 *Ga.* 127 (37 S. E. 161). This would seem to have been quite serious negligence, if mere negligence furnished a ground for punitive or exemplary damages. *In Chattanooga R. Co.* v. *Liddell,* 85 *Ga.* 482 (11 S. E. 853, 21 Am. St. R. 169), the case of Milwaukee

R. Co. *v.* Arms, supra, was cited approvingly and quoted at length, and the principle above announced was ruled. In *Atlanta &c. Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369, 401 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), Mr. Justice Lumpkin, in the opinion, quoted approvingly the following statement from the American & English Encyclopædia of Law: "It is not usual, however, to apply these quasi criminal-law doctrines to cases involving omission of statutory signals by railroad companies, and they are generally determined by the rules that govern in cases of negligence." And also the following from a note in the same volume: "This sufficiently appears from numerous cases cited throughout this article, wherein omissions to comply with statutory requirements are treated as merely negligent. It is proper to so treat them, because the statutory requirements are generally only intended to raise the standard of care, and make precautions necessary that would not have been required at common law."

In *Savannah Electric Co.* v. *Jackson*, 132 *Ga.* 559 (64 S. E. 680), the plaintiff brought suit against the defendant to recover damages for a personal injury, alleging that the car was running at a high, unlawful, and dangerous rate of speed on the public street of a city. The ordinance prohibiting the running of street cars at that point at a speed in excess of ten miles an hour and providing a penalty for so doing, was introduced in evidence, and there was testimony tending to show its violation. Nevertheless this court said: "There is no evidence in the record sufficient to show wilfulness, recklessness, and wantonness on the part of the employees of the defendant; and the charge should have omitted any reference thereto, and the presiding judge should not in that connection have used the expressions above quoted." The fact that the violation of a municipal ordinance in regard to speed is negligence, and not alone sufficient to show wilfulness. wantonness, or recklessness, but that to authorize a charge on that subject there must be some evidence in addition to the mere negligence arising from such violation, was recognized. What is here said does not conflict with the rule in regard to injury to trespassers, in the light of the discussion in *Southern Ry. Co.* v. *Chatman*, 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283), and other cases of like character.

A failure to comply with a statutory requirement as to the **giving**

of a signal or the taking of some precaution in connection with railway crossings, and which merely raises the standard of diligence, is different from disobedience of a statute in regard to something which is malum in se.   Whether the terms "wilful or wanton negligence," which are sometimes employed, be accurately used or not, they do not mean that mere negligence alone, as a rule, authorizes charges on the subject of exemplary and punitive damages.   See, on the general subject, 4 Elliott on Railroads, §1801 and notes; 1 Thomp. Neg. §22; Ala. Great So. R. Co. *v.* Moorer, 110 Ala. 742, 744 (22 So. 900); Parker *v.* Penn. R. Co. 134 Ind. 673 (34 N. E. 504, 23 L. R. A. 552).

The Supreme Court of Alabama has more than once discussed this distinction.   In Ala. Great So. R. Co. *v.* Linn, 103 Ala. 134 (15 So. 508), in an action against a railroad company for an injury to a team at a crossing, which was not a public crossing, but was used as a matter of convenience without objection on the part of the railroad company, where the evidence showed no more than that defendant's servants failed to give the signal required by the statute in passing through a town or village, it was held to be error to submit to the jury the question of "wanton negligence."   It was said:   "The failure of the employes of a railroad company to comply with the statutory requirements by giving signals when passing through any village, town, or city (Code, §1144), or by not observing the rate of speed fixed by law, makes the railroad company guilty of no more than simple negligence."   And in Alabama Great So. R. Co. *v.* Hall, 105 Ala. 599 (17 So. 176), it was said:   "In an action to recover damages for injuries alleged to have been inflicted by reason of negligence, before the person charged with the negligence can be held guilty of wilful or wanton negligence the evidence must show that he knew his conduct would inflict injury, or that, on account of the attendant circumstances which were known to him, or with knowledge of which he was chargeable, the inevitable or probable consequence of his conduct would be to inflict injury, and with reckless indifference to the consequences of such conduct he committed the act, or omitted to do his duty to avoid the threatened injury."

It will not do to say that the jury are the judges of whether such conduct exists.   They are not the judges of it, where there is no evidence of it.   Issues of fact are to be left to the jury, where the

pleadings and evidence justify it; but not where there is no evidence authorizing it. There must be something more than the mere proof of failure to give a statutory signal or make a stop required by a statute in approaching a crossing. There must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn. And these facts must be shown in addition to the mere omission to give statutory signals or take statutory precautions in approaching crossings. If this be not the law, then practically every case of negligent injury can be made the vehicle of submitting to the jury the question of wilfulness and wantonness, by merely using adjectives in describing the character of the negligence. Moreover, when motive, malice, or intent is involved, evidence may be admissible which is not so under an issue of simple negligence. This is not a question of what might constitute criminal negligence under a statute defining that offense. There was no evidence here which authorized a charge on the subject of exemplary or punitive damages, and the charge on that subject was error.

*Judgment reversed. All the Justices concur.*