Johnnie L. HORN, Plaintiff,

v.

C. L. OSBORN CONTRACTING CO., Defendant and Third Party Plaintiff,

v.

BAMA UTILITY CONTRACTORS, INC., Third Party Defendant.

Civ. A. No. 75–105–COL.

United States District Court, M. D. Georgia, Columbus Division.

Dec. 8, 1976.

Billy E. Moore and Edward W. Szczepanski, Jr., Columbus, Ga., for plaintiff.

S. E. Kelly, Jr., Kelly, Champion, Denney & Pease, Columbus, Ga., for defendant and third party plaintiff Osborn.

Richard A. Marchetti, of Page, Scrantom, Harris, McGlamry & Chapman, Columbus, Ga., for third party defendant Bama.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ELLIOTT, Chief Judge.

This matter is before the Court on separate motions for summary judgment filed by the Defendant-Third Party Plaintiff, C. L. Osborn Contracting Co. (hereafter Osborn) and the Third Party Defendant,

Bama Utility Contractors, Inc. (hereafter Bama), and it is clear from a review of the entire record which has been developed that there is no controversy concerning any fact material to a consideration of these motions.

The Board of Water Commissioners of the City of Columbus, Georgia contracted with Osborn as a general contractor to construct certain improvements in its sewer system and thereafter Osborn subcontracted a portion of the work to Bama. Under the subcontract Bama was to perform all of the work in a designated area, a complete section of the work project being turned over to Bama for completion. In advance of entering into the subcontract with Bama, Osborn knew of the quality of work done by Bama and that Bama was experienced in the type of work to be undertaken. Bama was furnished with a copy of the plans and specifications applicable to the area where Bama was to perform its subcontract work and was furnished with a design plan which had been furnished to Osborn by the Board of Water Commissioners which was applicable to the work area subcontracted. Thereafter Bama used its own equipment and employees in carrying out its work under the terms of the subcontract and Osborn provided no equipment or employees with respect thereto. Bama hired, fired and supervised its own employees and Osborn did not at any time hire, fire or supervise any employee working with Bama and Osborn did not supervise any work activity performed by Bama or exercise any control or supervision over any employee of Bama. The Board of Water Commissioners furnished an engineer-inspector on the entire project and that inspector as well as an inspector for Osborn did inspect the work product of Bama, however, these periodic visits were only for the purpose of observing the progress that was being made toward completion of the job and did not involve any direction as to how the work was to be accomplished by Bama.

At all times mentioned herein the Plaintiff, Johnnie L. Horn, was an employee of Bama and was directly supervised by other employees of Bama and he was engaged in the laying of sewer pipe in an excavation or ditch. While so employed he sustained personal injuries on two occasions. On July 2, 1974, while the Plaintiff was working in a ditch excavated to a depth of approximately 16 feet, the side or sides of the ditch caved in causing certain personal injuries. Having recovered from the injuries sustained in that incident, he returned to his job and was working on the same project in another ditch approximately 9 feet deep when, on October 9, 1974, he sustained additional personal injuries when the side or sides of this ditch caved in.

The plaintiff concedes that he was an employee of Bama, and not of Osborn. He also concedes that the relationship of Bama to Osborn was that of an independent contractor, and because of the injuries above referred to he has received the benefits provided by the Workmen's Compensation insurance coverage carried by Bama. By this action he seeks to recover general damages from the general contractor, Osborn.

Osborn filed a third party action against Bama, claiming a contingent right to recover against Bama under an indemnity provision included in the subcontract in the event of any recovery by Plaintiff against Osborn.

The Plaintiff's complaint is brought in three counts. In the first count Osborn, the general contractor, is charged with negligence, and in the second count with gross negligence, and in the third count with wilful and wanton negligence, all of the counts being premised on the contention that Osborn permitted the Plaintiff to work in a trench improperly opened and failed to provide safeguards so that the ditch would not collapse, it being alleged that such negligent acts proximately caused the two incidents complained of and the personal injuries sustained by the Plaintiff. The Plaintiff contends that the general contractor was negligent in not bracing or shoring the ditch at the job site in compliance with the provisions of the Safety and Health Regulations for Construction pertaining to excavation, trenching and shoring as promulgated

by the United States Department of Labor; that it violated the provisions of its general contract entered into with the Board of Water Commissioners, which contract incorporated by reference said Regulations; and that it required the Plaintiff to engage in work which was inherently dangerous.

Georgia law applies in this case and *§ 105–501 of the Georgia Code Annotated* establishes the general rule with regard to the non-liability of the employer who engages the services of an independent contractor, it being as follows:

> "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer."[1]

There are certain statutory exceptions to the general rule above quoted and the Plaintiff contends that the facts of this case bring his action within some of these exceptions. The first exception contended by the Plaintiff to be applicable is that codified in § 105–502(4), which is:

> "The employer is liable for the negligence of the contractor—(4) if the wrongful act is the violation of a duty imposed by statute."

In this connection the Plaintiff urges that the general contractor here violated the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. § 327, et seq.) and the Occupational Safety Health Act of 1970 (29 U.S.C. § 651, et seq.) as those Acts apply to the excavation of the ditches and the shoring of the walls of the ditches in which the Plaintiff worked and in which he was injured.

■ Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. § 333) predated the Occupational Safety and Health Act of 1970 and applies to federally funded contracts for construction which are described at 29 CFR § 1926.11, et seq. The general contract in this case pertains to a local project and in no way indicates that it falls within the purview of a federally funded construction project or within the specific scope of § 107 of the Contract Work Hours and Safety Standards Act. It is true that when Congress passed the Occupational Safety and Health Act (hereafter OSHA) in 1970, it did, at 29 U.S.C. § 653(b)(2), include as a part of OSHA the standards previously promulgated by the Secretary of Labor under the provisions of the Contract Work Hours and Safety Standards Act. Also, under § 6 of OSHA (29 U.S.C. § 655) the Secretary of Labor was authorized by Congress to use already existing federal standards and incorporate them as they apply to employers encompassed within the scope of OSHA. The difference between the two pieces of legislation is that the safety standards promulgated under the Contract Work Hours and Safety Standards Act pertain only to federally funded projects and those promulgated under OSHA apply to all employers "affecting commerce". The latter mentioned legislation is on its face broader in scope, but even so, there is nothing in the record in this case to indicate that it would be applicable to these contracts because there is no evidence indicating that either Osborn or Bama were employers "affecting commerce".

■ Even assuming, however, that the provisions of OSHA would apply in this instance the Plaintiff's contention that this would provide an exception to the general rule of non-liability for acts of independent contractors would not be sustained because OSHA itself specifies (at 29 U.S.C. § 653(b)(4)):

> "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."

---

1. It has been made clear in many Georgia decisions that the word "employee" in this section should be understood to mean "independent contractor".

The clear and unmistakeable intent of Congress in incorporating the language immediately above quoted in OSHA has been recognized in a number of decisions by United States Circuit Courts of Appeal as well as by several District Courts. The Fifth Circuit Court of Appeals, in *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (1975), and in *Skidmore v. Travelers Insurance Company*, 483 F.2d 67 (1973), and the Fourth Circuit Court of Appeals in *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (1974), and the Sixth Circuit Court of Appeals in *Russell v. Bartley*, 494 F.2d 334 (1974), and the District Court for the Northern District of Mississippi, in *Hare v. Federal Compress and Warehouse Company*, 359 F.Supp. 214 (1973),[2] and *Otto v. Specialties, Inc.*, 386 F.Supp. 1240 (1974), and the District Court for the Western District of Kentucky in *Cochran v. International Harvester Company*, 408 F.Supp. 598 (1975), have all concluded that the Congressional intent in enacting OSHA was not to create an action for damages in favor of employees and that a violation of the OHSA requirements or regulations issued thereunder would not suffice to form a basis for such private right. In the *Jeter* case, supra, the plaintiff was injured and received Workmen's Compensation benefits from his employer and then sought to recover compensatory damages against the owner of the property on which work was being done for whom the plaintiff's own employer was working as an independent contractor. The trial court had ruled that no cause of action for a violation of the OSHA regulations could be implied to run in favor of a person who was not an employee of the violator against whom recovery was sought. In its affirmance the Court of Appeals said:

> "Assuming without deciding that St. Regis may have violated the requirements of OSHA and the regulations pro-

mulgated thereunder by the Secretary of Labor, we affirm the trial court's charge and hold that no cause of action for such violations can be implied under OSHA to run in favor of a person who was not an employee of the violator against whom recovery is sought. . . . Nowhere in the language of the Act, its legislative history, or in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms. See 1970 U.S.Code Cong. & Admin.News, pp. 5177–5241; 29 U.S.C.A. § 651. The only provision in the statute which addresses itself to a private remedy clearly indicates that Congress did not intend OSHA to create a new action for damages in favor of employees. Section 653(b)(4) of the Act provides that

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

"It seems clear that Congress did not intend OSHA to create a new private cause of action, but, on the contrary, intended private rights to be unaffected thereby. . . .

"We have been unable to find a single case wherein a court has found such a private right of action created by OSHA. Although the results are not yet conclusive as to the litigation of private claims spawned by this relatively new Act, the courts so far have been unanimous in their rejection of contentions similar to

---

**2.** In passing, the Court notes with interest the striking similarity between the facts of the *Hare* case and the case now under consideration. In *Hare* an employee of a subcontractor engaged in laying sewer pipe at the bottom of a ditch was killed when the ditch caved in, and in a suit for the value of his life brought by his widow against the property owner and the

prime contractor it was contended that provisions of OSHA had been violated and that this created a cause of action in her favor. The Court held that the employer of an independent contractor is generally not liable for the torts of the independent contractor and that OSHA did not modify that fundamental rule.

the one made by Jeter. This Court has previously rejected any private right by an employee against the executive officers of the employer. *Skidmore v. Travelers Ins. Co.*, 356 F.Supp. 670 (E.D.La.), aff'd, 483 F.2d 67 (5th Cir. 1973). The Fourth Circuit has refused to imply an action against the employer itself, where state workmen's compensation was the exclusive remedy of the injured party. *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (4th Cir. 1974). The Sixth Circuit has refused an employee-against-employer action, as well as an action by the employee against the supervising engineer, who was not his employer. *Russell v. Bartley*, 494 F.2d 334 (6th Cir. 1974). See also *Hare v. Federal Compress & Warehouse Co.*, 359 F.Supp. 214 (N.D. Miss.1973); *Dekle v. Todd*, 132 Ga.App. 156, 207 S.E.2d 654 (1974).

"Although the facts here do not call upon us to decide definitively whether OSHA may create a private right of action by an employee against his employer, we perceive no base upon which to posit a claim on behalf of Jeter, a non-employee, against St. Regis. St. Regis owes no duty to Jeter under OSHA. There being no duty, there can be no breach. The district court was correct in not submitting this theory of action to the jury."

*Jeter v. St. Regis Paper Co.*, 507 F.2d 973, at 976, 977 (1975).

Pursuing the matter further, if it should be again assumed that the provisions of OSHA applied in this situation it should be noted that OHSA establishes certain safety duties devolving upon an employer, but only with respect to *his* employees, and as we have already emphasized, the Plaintiff was not an employee of Osborn. Additionally, the courts considering these matters have consistently held that the violation of

any duty under OSHA does not create directly or impliedly any type of civil remedy in favor of employees—*any* employees.[3]

The Plaintiff also contends that this action falls within the ambit of another exception to the general rule that an employer is not liable for the acts of an independent contractor citing § 105–502(3) of the Georgia Code Annotated, which exception is as follows:

"The employer is liable for the negligence of the contractor—(3) if the wrongful act is the violation of a duty imposed by express contract upon the employer."

directing the Court's attention to two provisions of the general contract between the Board of Water Commissioners and the general contractor Osborn, which read as follows:

Safety and Health Regulations: The contractor shall comply with Department of Labor Safety and Health Regulations for Construction promulgated under the Occupational and Safety Health Act of 1970 (PL 91–596) and under § 107 of Contract Work Hours and Safety Standards Act (PL 91–54).

And the following section found under a general provision of "Excavation":

(a) Bracing and Sheeting: The sides of all trenches and excavation for sewers and structures shall be securely held by staybracing, or by skeleton or by solid sheeting and bracing, as required by soil conditions encountered and in compliance with the Occupational Safety and Health Act of 1970.

The effect of these references to OSHA is to impose upon the general contractor by contract a duty to comply with the provisions of OSHA. However, the provisions of OSHA and the Regulations issued thereunder refer only to the duty of an employer to provide safe job sites by fur-

---

**3.** The Plaintiff urges the applicability of 29 C.F.R. § 1926.16 which would apparently extend the responsibility of a general contractor for all of the work contemplated under the general contract even when a subcontract relationship exists under the provisions of the Contract Work Hours and Safety Standards Act, however, 29 C.F.R. § 1910.12(c) provides that

that particular part of § 1926 pertains only to the Contract Hours and Safety Standards Act and does not pertain to the application of OSHA, which latter Act establishes duties for employers which are not dependent upon the existence of any contractual relationship with the Federal Government or upon any form of federal financial assistance.

nishing places of employment free from recognized hazards that might cause death or serious harm to *his* employees (29 U.S.C. § 654(a)(1)). The Act defines an employer as:

" . . . a person engaged in a business affecting commerce who has employees . . ." (29 U.S.C. § 652(5))

and it defines the term "employee" as:

" . . . an employee of an employer who is employed in a business of his employer which affects commerce." (29 U.S.C. § 652(6))

It is, therefore, clear that the statute itself relates only to the obligation of an employer "to his employees" and does not extend to other persons such as employees of subcontractors. No legislative history nor statutory provision has been cited by the Plaintiff to support the proposition that Congress intended to create a duty on behalf of the employer with respect to persons other than its own employees. See *Skidmore v. Travelers Insurance Company*, 356 F.Supp. 670, at 672 (D.C.E.D.La., 1973), *affm'd*, 483 F.2d 67 (5 Cir. 1973). Therefore, any duty imposed upon Osborn by the provisions of the contract above quoted related to those duties imposed by OSHA and the Regulations issued thereunder, and were duties which existed only between employer and employee, and Plaintiff not being an employee of Osborn nor a party to the contract referred to, the alleged wrongful act was not a violation of a duty imposed upon the general contractor by the contract. Insofar as any reliance may be placed by the Plaintiff on the Regulations issued pursuant to OSHA, it is, of course, fundamental that the Regulations issued pursuant to statutory authority cannot exceed the scope of the statute itself and we have already noted that the statute specifies that it shall not be construed "in any manner" to affect the common law or statutory rights, duties or liabilities of employer and employees.

The references to OSHA in the contract between the Board of Water Commissioners and Osborn are at best general in nature and the Regulations which have been issued under that Act which relate to construction are numerous and varied and even those particular Regulations which pertain to excavation provide for several ways in which the standards may be met, depending on a number of distinct factors and existing soil conditions. Also, the cases which have construed the statutory exception in the Georgia Code above cited have emphasized the word "express" and the necessity that such contractual obligation be placed upon the particular employer as opposed to any independent contractor. It is clear that the parties to this contract contemplated that parts of the work were to be subcontracted by the general contractor. Indeed, the contract itself included within its terms specific sections relating to the subcontracting of work. The contract also included a provision that the general contractor should cause appropriate provisions to be inserted in subcontracts relative to the work to be done by subcontractors to bind subcontractors to the contract by the terms of the general conditions and other contract documents insofar as they were applicable to the work of the subcontractors (and this was accomplished in the subcontract in this case). Since such a duty could be discharged in any effective manner, any act of the subcontractor in negligently failing to dig the ditches properly or in erecting shoring to protect the sides would be a collateral tort for which the prime contractor would not be liable because this would not be a violation of an express contract obligation falling within the exception provided in the Georgia Code. See *Southern Mills, Inc. v. Newton*, 91 Ga.App. 738, 87 S.E.2d 109 (1955).[4]

---

**4.** The Plaintiff also calls the Court's attention to another provision of the general contract between the Board of Water Commissioners and Osborn pertaining to the protection of persons and property and providing that the contractor shall be "responsible for all injuries or damages to persons or property that shall occur in connection with the performance of the work", and that the "contractor shall be as fully responsible to the owner for the acts and omissions of its subcontractors and other persons either directly or indirectly employed by them." The Court views these provisions as simply creating a contractual obligation of in-

It is clear that by consistent reference to OSHA the Plaintiff is attempting to accomplish indirectly what cannot be accomplished directly. Being confronted with the statutory general rule that an employer is not liable for the negligent acts of an independent contractor, the Plaintiff seeks to hurdle this barrier by using OSHA as a springboard, thereby bootstrapping[5] his case into one of the comfortable exceptions on the other side.

▮ The Plaintiff next contends that this case falls within another codified exception to the general rule that an employer is not liable for the negligent acts of an independent contractor, this exception being set out as § 105–502(2) of the Georgia Code Annotated, and being as follows:

"The employer is liable for the negligence of the contractor—(2) if, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed."

The Plaintiff has cited no case (and the Court is aware of none) in which it has been held that the laying of pipe within a trench or ditch, as in the case here, is an inherently dangerous activity, however carefully performed. The Plaintiff does cite one case in support of his contention, *Community Gas Co. v. Williams*, 87 Ga.App. 68, 73 S.E.2d 119 (1952), which dealt with the handling of propane gas, wherein the Georgia Court of Appeals determined such substance to be inherently dangerous. In that same opinion, however, the Court observed that:

"Where the work to be done is dangerous only because of the absence of proper care, the doctrine of nonresponsibility for the negligence of an independent contractor may apply . . ." (*Id.* at p. 78, 73 S.E.2d at p. 127)

On the other hand, in *Georgia Power Company v. Gillespie*, 49 Ga.App. 788, 176 S.E. 786 (1934), the Court held that although electricity is an inherently dangerous substance, yet where there was a safe way to perform the work and the negligence resulting in injury was purely collateral to the work contracted to be done, the employer would not be liable. In *Edmondson v. Town of Morven*, 41 Ga.App. 209, 152 S.E. 280 (1929), the Court determined that the digging of a well with a steam engine was not inherently dangerous as an instrumentality likely to set fire to adjacent premises. In *Ridgeway v. Downing Company*, 109 Ga. 591, 34 S.E. 1028 (1899), the Supreme Court of Georgia held that the independent contractor in digging a trench for a building foundation did not properly guard the trench, but that this was negligence collateral to the results sought to be obtained, and in considering whether this constituted an exception to the general rule of non-liability that Court held that the excavation itself was not inherently dangerous so as not to invoke the exception cited by the Plaintiff in connection with a claim for personal injuries sustained by an individual who fell into the excavation. In the case of *Hare v. Federal Compress and Warehouse Company*, 359 F.Supp. 214 (U.S.D.C., N.D. Miss.1973) (heretofore referred to in footnote 2 of this opinion), in a suit by an employee of a subcontractor against the general contractor this identical issue was considered and there the Court determined that the construction of the sewer line which involved the digging of ditches was not inherently dangerous and, therefore, would not support the applicability of the exception to the general rule of the non-liability of the employer for the acts of an independent contractor.

The teaching of all of these cases is that if the work itself is not inherently dangerous and in and of itself does not involve the risk of harm to others, the exception to the

demnity as between the contractor and the Board of Water Commissioners and the fact that damages may have been sustained by the Plaintiff on account of an independent negligent act or omission by the subcontractor would not be evidence of any violation of the contractual duty on the part of Osborn so as to make Osborn liable to the Plaintiff for special damages. See *Rodgers v. Styles*, 100 Ga.App. 124, at 132, 110 S.E.2d 582 (1959).

5. There is no such verb in the English language—but there should be.

general rule of non-responsibility does not apply. In this case there is contained in the discovery material which forms a part of the record a complete description of the work performed by the Plaintiff and his co-workers in the excavation of the ditches in which he was laying sewer pipe at the time of each cave-in and the undisputed facts show that the subcontractor directed, controlled and excavated the ditches and directed and controlled and laid the sewer pipe, and there is no basis for a finding that the laying of sewer pipe within such ditches was in itself inherently dangerous, however carefully performed, nor that the bracing or shoring or "V"-ing of the ditches in which the Plaintiff worked at the time of each incident in issue was other than collateral to the work being performed for the result sought to be accomplished. Therefore, the the third exception to the general rule does not apply.

In Count Three of his complaint the Plaintiff alleges that the proximate cause of the injuries which he sustained was the "wilful and wanton negligence" of Osborn in permitting the Plaintiff to work in a ditch that had been improperly opened and in failing to provide safeguards to prevent the ditch from collapsing.

 A "wilful failure" imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert or passive omission. *McGruder v. Georgia Power Company,* 126 Ga.App. 562, 191 S.E.2d 305 (1972), *rev. on other grounds,* 229 Ga. 811, 194 S.E.2d 440. Mere negligence and wilfulness are not synonymous terms. Before a person charged with negligence can be held guilty of wilful or wanton negligence, the evidence must show that he knew his conduct would inflict injury or that on account of the attendant circumstances which were known to him or with knowledge of which he was chargeable, the inevitable or probable consequence of his conduct would be to inflict injury and with reckless indifference to the consequences of

such conduct he committed the act or omitted to do his duty to avoid the threatened injury. In *Southern Railway Company v. Davis,* 132 Ga. 812, 65 S.E. 131 (1909), the Supreme Court of Georgia held that there must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn, and in its opinion the Court stated:

"If this be not the law, then practically every case of negligent injury can be made the vehicle of submitting to the jury the question of wilfulness and wantonness, by merely using adjectives in describing the character of the negligence." (p. 819, 65 S.E. p. 134.)

In this case the undisputed facts show that the Defendant general contractor was not involved in any way in the excavation of the ditch in which the Plaintiff was injured. It did not open the ditch, it did not supervise the opening of the ditch, it did not exercise control over the time, manner and method by which the ditch was opened, it did not direct what safeguards should be or should not be used to prevent a cave-in of the ditch, and it did not by its conduct prevent in any way the use of any safeguards which might have been used by the subcontractor. In urging its motion for summary judgment Osborn has challenged the Plaintiff to show that there is basis for his allegations of wilful and wanton negligence and the Plaintiff has failed to show that there is any factual basis upon which this count can stand.

Consistent with the foregoing opinion, the Court concludes that the motion for summary judgment filed by the Defendant Osborn should be sustained, and since any liability of the Third Party Defendant Bama is contingent upon Osborn's liability, the motion for summary judgment filed by Bama must also be sustained. Accordingly, both motions are hereby sustained and it is directed that the complaint in its entirety be and it is hereby dismissed upon the merits.