Lana Irene MACEY, Personal Representative of the Estate of Robert Lee Smith, III, Deceased, and Lana Irene Macey and Robert Lee Smith, Jr., as parents of Robert Lee Smith, III, Plaintiffs,

v.

UNITED STATES of America and Felton Construction Company, Defendants.

No. A75–212 Civil.

United States District Court, D. Alaska.

June 29, 1978.

Warren C. Colver, Anchorage, Alaska, for plaintiffs.

Paul Waggoner, of Biss & Holmes, Anchorage, Alaska, for Felton Construction Co.

Alexander Bryner, U.S. Atty., for Alaska, Anchorage, Alaska, for United States.

## MEMORANDUM AND ORDER

von der HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions "to establish the law of the case," Felton's motion to reconsider, and plaintiffs' motion to publish depositions.

This action was brought to recover damages for the death of Robert Lee Smith III. The factual basis for the action involves the drowning of Smith, age four years, in a partially waterfilled ditch excavated by Felton Construction Company in a residential area of the Kodiak Coast Guard Base in Kodiak, Alaska. The accident occurred while the child was apparently in the care and control of a babysitter who had been hired by Mrs. Macey, the child's mother. Jurisdiction over the United States is based upon the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Jurisdiction over Felton is based upon diversity of citizenship. 28 U.S.C. § 1332(a).

The motions to establish the law of the case raise several issues which will be considered seriatim.

*Damages*

The first issue raised is the method of calculating damages. The primary question on damages is whether the "accumulations theory" or some other theory should govern the damage award. The court concludes that the accumulations theory is the appropriate method of calculating damages for the death of a minor with no statutory dependents.

■ The starting place for this analysis is the Alaska Wrongful Death Statute.[1] In cases such as this where the deceased is not survived by the statutory beneficiaries damages are limited to the loss to the estate. *Matter of Estate of Pushruk*, 562 P.2d 329, 331 (Alaska 1977); *Leavitt v. Gillaspie*, 443 P.2d 61, 69 (Alaska 1968). While this statement of Alaska law is based upon the statute and an explicit holding of the State Supreme Court it only begins the inquiry. As demonstrated by a major commentator "loss to estate" statutes encompass several theories of damages. Speiser, *Recovery for Wrongful Death*, 2d, §§ 3:2,

3:62 (hereinafter Speiser). The "accumulations theory" is only one of three major approaches.

As recognized by counsel the Alaska Wrongful Death Statute was adopted substantially from the Oregon Statute. *Estate of Pushruk, supra*, at n.7. Prior to the decision in *Goheen v. General Motors Corp.*, 263 Or. 145, 502 P.2d 223 (1972), Oregon courts had consistently stated the rule that damages in situations such as the present were to be the net savings which the defendant would have accumulated and left to his estate at the expiration of his life expectancy. *Id.* at 230. This rule was reiterated for all awards under the pre-1939 Oregon Act which did not distinguish between decedents with dependents and those without dependents. *Id.* at 231–33. It was also deemed authoritative for the post-1939 cases involving decedents without dependents. *Id.* at 233.

Although the Oregon cases dealing with the issue stated the above rule the court in

---

1. A.S. § 09.55.580 provides:

> *Action for wrongful death.* (a) When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. The act shall be commenced within two years after the death, and the damages therein shall be such damages as the court or jury may consider fair and just, and the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife or children, him or her surviving, or other dependents. *When the decedent leaves no husband, wife or children surviving him or her or other dependents, the amount recovered shall be administered as other personal property of the deceased person but shall be limited to pecuniary loss.* When the plaintiff prevails, the trial court shall determine the allowable costs and expenses of the action and may, in its discretion, require notice and hearing thereon. The amount recovered shall be distributed only after payment of all costs and expenses of suit and debts and expenses of administration.
>
> (b) The damages recoverable under this section shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.

> (c) In fixing the amount of damages to be awarded under this section, the court or jury shall consider all the facts and circumstances and from them fix the award at a sum which will fairly compensate for the injury resulting from the death. In determining the amount of the award, the court or jury shall consider but is not limited to the following:
>
> (1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to age thereof, that would have resulted from the continued life of the deceased and without regard to probable accumulations of what the deceased may have saved during his lifetime;
>
> (2) loss of contributions for support;
>
> (3) loss of assistance or services irrespective of age or relationship of decedent to the beneficiary or beneficiaries;
>
> (4) loss of consortium;
>
> (5) loss of prospective training and education;
>
> (6) medical and funeral expenses.
>
> (d) The death of a beneficiary or beneficiaries before judgment does not affect the amount of damages recoverable under this section.
>
> (e) The right of action granted by this section is not abated by the death of a person named or to be named the defendant.
>
> (Emphasis added).

*Goheen* recognized that they did not necessarily follow the rule as stated. *Id* at 232–33. The court, however, apparently viewed the cases which stated, but did not follow, the rule regarding net accumulations as presenting difficulties of proof rather than a disregard for the law. *Id.* at 234. Indeed, the *Goheen* court specifically reaffirmed the application of the net accumulations rule to the facts of the case establishing that rule.[2]

As this court reads *Goheen* it rejected the net accumulations rule with respect to its particular facts only. That case, which involved the death of two nuns who had taken vows of poverty and, hence, could show no possibility of an estate at death, allowed a theory other than net accumulations to show loss to the estate. *Id.* at 241. The stated reason for rejecting the net accumulations theory was the need "to respond to 'new emergencies' in this often perplexed and tortured field of the law." *Id.* The case at bar presents no such new emergency.

■ Plaintiffs raise two objections to the net accumulations theory. The first objection is based upon the wording of the statute. A.S. § 09.55.580(c)(1) provides that in fixing the amount of damages to be awarded the court or jury shall consider:

> deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to the age thereof, that would have resulted from the continued life of the deceased and *without regard to probable accumulations* of what the deceased may have saved during his lifetime; (Emphasis added)

Plaintiffs state that the terms of the statute preclude the accumulations theory. The court agrees that if this section applies to actions by minors without dependents that the accumulations theory is improper.

However, this section does not apply to such actions.

Section (a) of A.S. § 09.55.580 creates a general cause of action for wrongful death for persons with certain dependents.[3] It then establishes the pecuniary loss standard for those without the noted dependents. In section (c) of the statute several subparts indicate matters that the court or jury *shall* consider. This is the section containing the language barring the net accumulations theory. Subsection (4) of section (c) requires the finder of fact to consider loss of consortium. Yet, under a pecuniary loss statute loss of consortium is not generally compensable. Speiser, *supra*, at § 3:68. Speiser cites the Alaska statute specifically for the proposition that no such recovery may be obtained. *Id.* n. 66. Thus, if section (c) applies to persons without statutory dependents the court is required by the term *"shall"* to consider non-compensable items. The only sensible manner to avoid this result is to conclude that section (c) does not apply to those without dependents. This reading of the statute is supported by the use of the term "benefit" in section (a) when referring to the distribution to dependents and the use of similar terms in subsection (c)(1).

■ The second general area of objection to the net accumulations theory is that it is unfair to the living dependents. *Speiser, supra,* § 3:63. This objection does not apply to the Alaska statutory scheme. Under that scheme, as previously developed, the net accumulation theory is only applied to those without dependents. Hence, the underlying premise to the attack on this basis does not exist in Alaska.[4] Therefore, based upon the long line of Oregon cases construing a similar statute, the statutory language, and the general reaffirmation of the net accumulations theory in *Goheen* the

---

2. At page 240 the court stated:

> "[W]e hold that the rule of *Carlson* under which, if literally applied, there must be proof of the probable accumulation of net savings, *while proper for application to the facts of that case* . . .. (Emphasis added).

*Carlson* is *Carlson v. Oregon Short Line & U.N. Ry. Co.,* 21 Or. 450, 28 P. 497 (1892), which stated a net accumulations theory.

3. *See* note 1, *supra.*

4. Alaska has specifically rejected a "future dependency" theory. *Matter of Estate of Pushruk,* 562 P.2d 329, 331 (Alaska 1977).

court concludes that it is the proper measure of damages for the death of a minor without dependents. *See also Linge's Adm'r v. Alaska Treadwell Co.*, 3 Alaska 9, 13 (1906).

The next issue regarding damages is whether any award should be reduced to present value. This issue is treated differently as to the two defendants and the court will initially analyze the general theory in Alaska.

■ In *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967), the Alaska Supreme Court looked to countervailling factors such as inflation and increased earning capacity which would tend to offset the increase in an award which was not reduced to present value. *Id.* at 670–72. The rule of *Beaulieu* is that awards of future wages are not reduced to present value. A corollary to this rule is that general inflation related wage increases and future inflation are not considered. This position recently has been cited with approval with the modification that certain and fixed wage increases may be considered. *State v. Guinn*, 555 P.2d 530, 546 (Alaska 1976); *See also Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 937 (Alaska 1977). The rule has been adopted specifically in wrongful death cases where the measure of damages is loss to the estate. *Leavitt v. Gillaspie*, 443 P.2d 61, 69 (Alaska 1968). Hence, in calculating damages the award will not be reduced to present value and general inflationary trends will not be considered.

■ A related matter involves the use of wage tables. The issue is whether tables in effect at the time of death or present tables should be utilized to calculate the probable net accumulations. The parties do not accept the statement by the Alaska Supreme Court that this difference is not significant. *State v. Phillips*, 470 P.2d 266, 274 n. 28 (Alaska 1970). The court concludes that current tables may be utilized.

In *State v. Guinn*, 555 P.2d 530 (Alaska 1976), the decedent was killed in 1970. In calculating his future earnings the plaintiffs' expert assumed that decedent would have been promoted on September 1, 1974. *Id.* at 544. That expert used the "then current" union wage scale. *Id.* at 545. Based upon this language and the subsequent discussion of 1974 dollars it is apparent that a 1974 wage scale was used in that case. This reading of *Guinn* has been confirmed by the court's examination of the briefs on appeal. *See* appellee's brief, p. 53. Such a method of calculation was generally approved although not an issue on appeal.

Defendants' contention that this use of wage scales adopted after the date of the accident will result in higher verdicts if trial is delayed is most easily answered by pointing out that the expense of items consumed at a later date will also be higher. If a later wage scale is used then the testimony should reflect consumption based upon the value of the later dollars.

■ Defendant United States contends that as to it any award of damages must be reduced to present value citing *United States v. English*, 521 F.2d 63, 72 (9th Cir. 1975), and *Felder v. United States*, 543 F.2d 657, 669 (9th Cir. 1976). Although the court does not agree with the result reached in *English* and *Felder* it is bound to follow their holdings as authoritative decisions of the Circuit Court directly on point.

In *English* the court stated the rule that local law regarding damages is to be followed unless it is punitive or provides for more than compensatory damages. 521 F.2d at 70. It then held as a matter of federal and California law that an FTCA award should be reduced by taxes and reduced to present value. In *Felder* the court made it clear that the reduction to present value was based upon the rule that disallows non-compensatory damages against the United States. 543 F.2d 657. The court noted that the reference to California law in *English* related to the tax issue. *Id.* at n. 15. It appears to this court that the well reasoned Alaska decision in *Beaulieu, supra,* and its progeny were intended to create full compensation and alleviate problems of proof on matters of speculation rather than give a punitive award. However, in light of *Felder,* the court must

allow for a discount to present value as against the United States.

■ The final issue with respect to the measure of damages is the effect of taxes. As the court has concluded that a net accumulations theory will be used to determine damages the effect of a reduction for taxes is inherent in the "net" concept.

### Parental Negligence

Plaintiffs assert that the ultimate award of damages may not be reduced by consideration of any culpable conduct by, or imputed to, decedent's parents. In a prior memorandum the court concluded as a matter of substantive law that parents may be liable for the negligent supervision of a child relying on *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 292–293, 479 P.2d 648, 652–53 (1971). The issue now presented is the appropriate procedure for the presentation of such a claim in this case.

In the first, second, and fourth claims for relief the parents of the deceased child have sued in their representative capacity under the Alaska Wrongful Death and Survival Statutes. A.S. §§ 09.55.570–580. In the third claim the parents pled an independent claim for relief under A.S. § 09.15.010.[5] In a prior memorandum this court concluded that the third claim must also be presented by the parents in a representative capacity citing *State Farm v. Wainscott,* 439 F.Supp. 840, 842 (D.Alaska 1977). No formal order dismissing the substantive claim on behalf of the parents was entered.

In its answer Felton set up the negligence of the parents as an affirmative defense. At the time of that answer the parents were plaintiffs in their representative and personal capacities. To the extent they were plaintiffs in their personal capacity the court had the power to consider the "affirmative defense" of the parents' negligence as a counterclaim. Rule 8(c), Fed.R. Civ.Pro. With the entry of the court's prior order denying the parents' independent

claim for relief a certain confusion has been created regarding the procedural posture of the issue of the parents' negligence. Plaintiffs apparently contend that this issue is no longer present in this case as the parents are now acting only as representatives of the estate.

■ The parties have argued at length about the effect of this court's prior orders, the effect of incorporation by reference in the pleadings, and other like issues. Without belaboring these contentions the court notes that the issue of the parents' negligence has been at issue in this action from the outset. Regardless of their present status in this litigation the parents certainly were parties in their individual capacity until recently. The arguments about the names attached to the pleadings cuts against modern pleading theory. The parents cannot possibly show any surprise or prejudice by a formal redesignation of the pleadings at this time properly to reflect the nature of the claim for their negligence and the interests of justice require that such a redesignation occur. Hence, the court formally will dismiss the action by the parents in their individual capacities without making a Rule 54(b), Fed.R.Civ.Pro. finding. The claims for the negligence of the parents now will be considered a third-party claim pursuant to Rule 14(a), Fed.R. Civ.Pro. 6. Wright & Miller, *Federal Practice and Procedure,* § 1448. They will be held liable to the extent of their negligent supervision.

### Joint and Several Liability

The next issue raised concerns the question of the effect of the adoption of comparative negligence on the doctrine of joint and several liability. Alaska adopted a comparative negligence system by judicial action in *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975). In *State v. Guinn,* 555 P.2d 530, 547, n. 42 (Alaska 1976), the Alaska Supreme Court noted that the adoption of comparative negligence would require legis-

---

5. A.S. § 09.15.010 states:

A parent may maintain an action as plaintiff for the injury or death of a child below the age of majority. A guardian may maintain an action as plaintiff for the injury or death of his ward.

**690**

lation amending Alaska's Uniform Contribution Among Tortfeasors Act (A.S. § 09.-16.010, *et seq.*)[6]. That Act provides essentially that joint tortfeasors are liable on a pro rata basis and relative degrees of fault are not considered. A.S. § 09.16.020(1). As noted by the Alaska court the adoption of comparative negligence creates certain difficulties with this distribution and those difficulties have not yet been cured by legislation.

The plaintiffs rely heavily on the decision of the California Supreme Court in *American Motorcycle Ass'n v. Superior Ct.* That decision which was published in the advance sheets at 143 Cal.Rptr. 692 (1978), now has been withdrawn at the request of the court.[7] This court notes that this issue also presently is pending before the Alaska Supreme Court in *Weedmore v. Home Insurance Co.,* Case No. 3633 and *Arctic Structures v. Weedmore,* Case No. 3654. The court reserves ruling on this issue at the present time. The court notes that if the doctrine of joint or several liability survives the United States will also be bound by that theory. *H. L. Properties, Inc. v. Aerojet-General Corp.,* 331 F.Supp. 1006, 1009–10 (S.D.Fla.1971), aff'd and opinion adopted at 468 F.2d 1397 (5th Cir.).[8]

*Negligence Per Se—OSHA Regulations— Contractual Provisions*

Plaintiff has requested the court to rule that defendant Felton is negligent *per se* due to violations of certain state and federal OSHA regulations. In *Northern Lights Motel v. Sweaney,* 561 P.2d 1176, 1183 (1977), the Alaska Supreme Court reiterated four prerequisites to the use of general safety regulations to establish negligence *per se.* To establish negligence *per se* the regulation must be:

1. To protect a class of persons which includes the one whose interest is invaded; and

2. To protect the particular interest which is invaded; and

3. To protect the interest against the kind of harm which has resulted; and

4. To protect that interest against the particular hazard from which the harm results.

This test is taken from the Restatement of Torts 2d, § 286; *see also Bachner v. Rich,* 554 P.2d 430, 443 (Alaska 1976). Once these four criteria are met the court may in its discretion adopt the regulation as the applicable standard of conduct. 561 P.2d at 1183.

The parties dispute with respect to the applicability of OSHA regulations begins and focuses on the first factor. Defendants assert that this child was not within the class of those protected by OSHA regulations. This assertion is well taken.

Two United States District Courts have held that federal OSHA regulations do not even apply to employees of subcontractors. *Horn v. C. L. Osborn Contracting Co.,* 423 F.Supp. 801, 808 (M.D.Ga.1976); *Cochran v. International Harvester Co.,* 408 F.Supp. 598, 602 (W.D.Ky.1975). This court agrees with those decisions to the extent that they would preclude OSHA regulations from establishing liability in this case wherein the injured party was not an employee of any type nor was he on the premises for a business purpose.

---

**6.** The court in *Guinn* cited A.S. § 09.10.010. That citation apparently was in error.

**7.** Since the filing of the court's Memorandum and Order an opinion of the California Supreme Court has modified its decision in the *American Motorcycle* case. *See American Motorcycle Ass'n v. Superior Court,* 146 Cal.Rptr.182, 578 P.2d 899 (1978).

**8.** The court notes that the defendants herein do not seek to reduce any award based solely upon the independent negligence of the baby-

sitter who is not a party to this action. Rather, they seek to impute her negligence to the parents based upon principles of agency. *See Harpst v. Kirkpatrick,* 26 Cal.App.3d 482, 102 Cal.Rptr. 621 (1972); *Casas v. Maulhardt Buick, Inc.,* 258 Cal.App.2d 692, 66 Cal.Rptr. 44, 52 (1968); *see* Felton's memorandum of June 12, 1978, pp. 5–6. As discussed previously the parents are parties to this action. Therefore, the court does not pass upon the issue whether an award may be reduced to account for the negligence of an unjoined tortfeasor.

■ The Alaska Supreme Court in *Bachner v. Rich*, 554 P.2d 430, 444 (1976), adopted a broader reading of the state OSHA regulations than the federal courts just noted. It stated that all employees lawfully on the premises were covered and termed its reading "broad". To include non-employees and non-business personnel within the ambit of the state OSHA regulations would widen significantly and improperly this "broad" interpretation. The state OSHA was passed to protect employees. *Id.* Hence, the use of these regulations or the federal OSHA regulations to establish negligence *per se* is not appropriate under Alaska law.

■ In a related vein plaintiffs seek to impose liability based upon certain contractual provisions. Those provisions are set forth in the contract between Felton and the United States. They generally provide that Felton is to provide safety devices and equipment and is responsible for damages.[9] The clauses generally relate to the duties between Felton and the United States. *Cf. Horn v. C. L. Osborn, supra* at 808 n. 4. It may be true that the duties are for the benefit of "other persons" and such "other persons" may include the decedent. However, no authority can be found for the proposition that these clauses operate to impose negligence *per se*. Indeed, under the tests of *Northern Lights Motel, supra,* at 1183, and *Bachner, supra,* at  441–42, these clauses are too general to create negligence *per se*. To the extent that these clauses incorporate OSHA requirements they are no more aid than direct application of such standards.

Felton has submitted a motion to reconsider a prior ruling on the issue of indemnification. Although the motion is untimely the court has considered it and concludes that the prior memorandum on the issue correctly sets forth the law on this issue. The court finds the new "factual" material submitted with the motion to be unpersuasive and irrelevant.

Accordingly IT IS ORDERED:

1. THAT the motions to establish the law of the case are granted and denied in conformity with this memorandum. To summarize:

a. Under Alaska law damages in a wrongful death action brought on behalf of the estate of a minor with no dependents are determined under a net accumulations theory;

b. Under Alaska law such damages in a wrongful death action are not reduced to present value when assessed against a private party; such damages are reduced to present value as against the United States in an action based upon the Federal Tort Claims Act;

c. Wage tables for the year in which a trial occurs may be utilized in an action for wrongful death;

d. In an action for the wrongful death of a minor without dependents brought by the parents of the minor in their representative capacity the parents may be joined in their individual capacity as third party defendants and are liable for their negligent supervision of the child. The

---

**9.** Those provisions state:
Clause 40(a):
The contractor shall provide safety controls for protection to the life and health of employees and other persons; for prevention of damage to property, materials, supplies, and equipment; and for avoidance of work interruptions in the performance of this contract; and the Contractor shall comply with any accident prevention or safety requirements included or referenced in this contract.
Clause 12:
PERMITS AND RESPONSIBILITIES: The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations, in connection with the prosecution of the work. He shall be similarly responsible for all damages to persons or property that occur as a result of his fault or negligence. He shall take proper safety and health precautions to protect the work, the workers, the public and the property of others. He shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire construction work, except for any completed unit of construction thereof which theretofore may have been accepted.

claims of the parents in their individual capacities are dismissed;

e. The United States may be held liable jointly and severally;

f. OSHA regulations do not impose a standard of care toward a non-employee or non-business related person present on a construction site;

g. The contract clauses in this case do not establish negligence *per se.*

2. THAT to the extent that Felton's motion to reconsider requests the court to alter its prior ruling the motion is denied.

3. THAT the motion to publish depositions is granted. The clerk may publish the Shantz deposition.