**Paula CARROLL, Appellant,**

v.

**Donna CARROLL, personal representative of the estate of James A. Carroll, Appellee.**

**No. S–5571**

Supreme Court of Alaska.

Oct. 6, 1995.

---

David T. Lyons, Seattle, Washington, and Lance Parrish, Parrish Law Office, Fairbanks, for appellant.

James R. Blair and Richard W. Hompesch, Winfree and Hompesch, Fairbanks, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

The two beneficiaries of the estate of James Carroll are his wife, Donna, and his only child, Paula. Donna is the estate's personal representative, and she attempted to sell the estate's interests in a corporation and a partnership to James' partner. Paula has opposed the sales, alleging that Donna agreed to them without adequate information. The superior court refused to block the sales. Paula now brings this appeal.

### II. FACTS AND PROCEEDINGS

James Carroll and Lewis Vondra were longtime business partners and friends. They joined together in two enterprises: a corporation and a partnership.

The two formed a closely held Washington corporation, Carroll–Vondra, Inc. Each owned 50% of the stock. They signed an agreement forming the Carroll–Vondra part-

nership on May 1, 1968. The partnership owns properties in Alaska, Washington, and Colorado, working interests in oil and gas leases, and various promissory notes. The agreement states that upon the death of one partner, the surviving partner may purchase his interest at the appraised value.

A quitclaim deed transferred the Brown's Hill Quarry, located near Fairbanks, from the partnership to the corporation; the partners executed the deed in 1982, but it was not recorded until August 27, 1991. The estate asserts that the delay was inadvertent.[1]

James died intestate on July 27, 1989. He was survived by his wife, Donna, and his daughter, Paula. Donna is the personal representative of the estate.

## A. Transfer of the Stock

Vondra offered to purchase the estate's shares in Carroll–Vondra, Inc. for $400,000 on or about May 4, 1990. Paula alleges that Donna discussed the offer with her, and told her that she believed it was fair in light of the fact that the Brown's Hill Quarry was running out, and that the quarry business was doing poorly, largely due to insufficient demand in the Fairbanks area.

Donna filed a motion for superior court approval of the sale of the estate's stock holdings on August 21, 1990. She also filed an affidavit stating that she was not seeking an appraisal because she believed Vondra's offer to be reasonable and because she wished to avoid the administrative costs of an appraisal. She served Paula with a copy of the motion and affidavit. Paula did not oppose the motion for approval of the stock sale. The superior court approved the sale on September 22, 1990, and the sale closed in November, 1990.

Subsequently, Paula visited the Brown's Hill Quarry in September, 1991, and observed an operation far more active than she anticipated. She later testified, however, that she did not know the boundaries of the Carroll–Vondra corporation's property when she visited the quarry. On March 5, 1992, Paula moved the superior court to set aside the stock sale.

## B. Transfer of the Partnership Interest

Vondra decided to exercise his right to buy out James Carroll's interest in their partnership, and so informed Donna in a letter dated January 8, 1991. On July 9, 1991, Donna moved the superior court to approve the sale of the estate's interest in the partnership for a price of $274,049, payable over five years, and her attorney sent a number of letters to Paula's attorney concerning the sale. Donna obtained an "Opinion of Value," according to which the contemplated purchase price for the estate's interest in the partnership was considered a fair one. Paula eventually challenged the adequacy of the "Opinion of Value," and Donna thereafter filed a "full appraisal" of some partnership properties.

On March 5, 1992, Paula filed a "Motion for Court Order for Appraisal of Partnership Assets" together with a supporting memorandum, in which she asserts that Vondra misrepresented the economic health of the corporation to Donna, and that Donna's attorney may have had a conflict of interest.[2] In this memorandum Paula argued that the partnership assets should be subjected to a formal appraisal.

## C. Subsequent Proceedings

A hearing was held before the probate master for the purpose of resolving all pending motions. On June 2, 1992 Paula filed a supplemental memorandum in support of her motions to set aside the stock sale and formally appraise the partnership assets.

The supplemental memorandum included a report by Edward Strandberg, which set forth a much higher estimate of the value of the Brown's Hill Quarry than Donna had. Donna then moved to strike the report, arguing that Paula had not established Strandberg's qualifications. Donna served this motion on Paula's counsel. Paula did not op-

---

1. Donna submitted an affidavit from the partnership's CPA stating that the corporation had been listing the quarry on income tax returns since 1982.

2. Paula subsequently abandoned the conflict of interest argument.

pose the motion.[3] On July 22, 1992, the superior court struck the Strandberg report. Paula moved for reconsideration, without offering any supporting arguments. The superior court denied the motion.

The probate master issued findings of fact and recommendations on November 30, 1992, in which she found that Paula had not presented substantial grounds for further delay, but recommended that Paula be allowed to submit an appraisal of previously unappraised partnership assets, and that the estate be ordered to reimburse Paula for the appraisal if the appraisal met certain specified requirements.[4] Donna objected on the basis that a full appraisal of the Alaska properties had been done, and that a full appraisal of other properties would be unnecessary and expensive.[5]

Meanwhile, Paula moved the superior court to order a distribution and inspection of estate records. She filed an affidavit in which she stated that she desired to appraise the partnership assets, but would be unable to do so without a partial distribution. Donna did not oppose inspection of the estate's records, making it unnecessary for the court to rule on that portion of the motion.

Donna did, however, oppose the motion for distribution. She argued that the superior court might moot the question by departing from the probate master's recommendation. Additionally, she argued that the request for $45,000 was excessive, and supported by no evidence in the record. Finally, she contended that Paula's assertions of impecuniousness were exaggerated. She recited a litany of disbursements she had made to Paula, including half of the first $300,000 from the stock sale.

The superior court denied all of Paula's outstanding motions including Paula's request to refile the Strandberg report. It declined to provide Paula with an opportunity to obtain her own appraisal, noting that "Paula Carroll has presented no evidence, other than her personal speculation, that the appraisal obtained is unrepresentative of the value of the partnership assets."[6] Two days later, it approved the sale of the estate's partnership interest.

■■■ On Donna's motion, the superior court certified its rulings as final judgments. Paula appeals.[7]

3. Her attorney does claim that there was some confusion regarding the date of the hearing.

4. The probate master found in relevant part: Throughout these proceedings, Paula Carroll has waited until parties have relied on her lack of action and then objected to the personal representative's actions and decisions. Her second guessing of her mother's decisions has caused the estate substantial expense and delay in administration. She either believes that her mother is "in cahoots" with Lewis Vondra and she is likely to be cheated, or more likely that her mother is incompetent and is "being taken to the cleaners" by Lewis Vondra. However, she had failed to present timely, credible evidence that her suspicions are correct.

5. Donna also submitted a supplemental memorandum, in which she explained that the IRS was auditing the properties in question and that this made another appraisal unnecessary. The memorandum also stated that the estate's appraiser had completed an estimate of the cost of completing a comprehensive appraisal.

6. In its order disposing of these motions the superior court observed that
counsel for Paula Carroll made clear that Ms. Carroll's only real objection was to the valuation of the rock quarry property. The deed

transferring this property from the partnership to the corporation was signed by the decedent prior to his death but was recorded by the corporation/Vondra after decedent's death. The deed is valid even though not timely recorded and the rock quarry property was a corporate asset as of the date of decedent's death.

7. Paula contends that this case presents only questions of law, which this court reviews de novo. Although there are some such questions, most of Paula's arguments go to whether Donna breached her duty of care as personal representative. That question is one of fact. See State v. Guinn, 555 P.2d 530 (Alaska 1976). We will not disturb the superior court's findings of fact on the issue of breach unless the findings are clearly erroneous. Id.

Paula also argues that the superior court should not have allowed the transfers of stock and partnership interests to go forward. We apply an abuse of discretion standard to the trial court's use of its equitable power. See Wheatland Cold Storage & Meat Processing, Inc. v. Wilkins, 705 P.2d 316, 319 (Wyo.1985) (trial court's decision whether to set aside execution sale); North Kenai Peninsula Rd. Maintenance Serv. Area v. Kenai Peninsula Borough, 850 P.2d 636, 639 (Alaska 1993) (decision whether to

## III. ARGUMENTS

### A. The Estate's Sale of Its Interest in Carroll–Vondra, Inc.

■ A personal representative is a fiduciary who has a duty to act as a prudent person caring for the property of another would. AS 13.36.075. Paula alleges that Donna violated the standard of care by failing to require a sufficient price for the sale of the estate's stock in Carroll–Vondra, Inc. More specifically, she contends that (1) Donna's duty required her to obtain an appraisal, and (2) Donna should have placed the stock on the open market. As a result of that inaction, Paula alleges, Donna did not know what assets the corporation possessed; specifically, she did not know the corporation had a quarry capable of generating a net income of $543,600 per year. She admits, however, that this net income figure is speculative.

■ Donna's first response is that Paula cannot now criticize the sale or the ruling because she did not timely oppose Donna's motion for superior court approval of the stock sale. She offers four sub-arguments, which amount to the same point: Paula consented and therefore waived her right to object to the sale of the estate's interest in the corporation.

˙ This contention is correct. Paula protests that she did not have full information about the corporation's assets or their value.

Nonetheless, she did know enough to raise her objections earlier. That is, she knew that there had been no appraisal or public offering. Her current argument is that any personal representative who takes neither of those measures before selling stock is negligent. The knowledge of what measures Donna had or had not taken was enough to prompt such an argument earlier.

Paula waited one and one-half years after the sale occurred to challenge it, knowing all the while there had been no appraisal. Additionally, one of the most significant alleged consequences of Donna's failure to have an appraisal done is ignorance of corporate assets.[8]

■ Paula makes another argument: Donna was negligent because she sold the stock at a price that was too low. Yet Paula acknowledges that she does not know what the quarry is really worth, and the probate master found that she had not properly introduced any evidence establishing a value different from the sale price.

Paula submitted a report to the superior court that estimated a value that was much higher than the sale price. Yet she did not establish the qualifications of Strandberg nor did she object to Donna's motion to strike which was based on that failure. Thus, we hold it was not improper for the superior court to grant the motion to strike.[9]

---

grant or deny preliminary injunction). The same standard applies to decisions concerning the admissibility of evidence. *See Yang v. Yoo*, 812 P.2d 210, 217 (Alaska 1991).

8. Paula suggests that if, as she claims, Donna knew that the corporation held the Brown's Hill Quarry, she concealed that fact from Paula. This argument is odd, given that Paula explains her delay in challenging the stock sale by stating that she did not object to the selling price until she saw the quarry's operations. If she did not know the quarry was a corporate asset, it is difficult to explain her decision to oppose the stock sale after seeing the quarry in person. Nor does Paula allege that she requested specific information about the corporation's assets and that Donna misled her.

9. Paula relies heavily on Strandberg's estimate throughout her briefs. As Donna emphasizes, the Strandberg report is not part of the record.

Paula correctly notes that a motion to strike under Civil Rule 12(f) must be directed at a pleading. Yet there is a more general motion to strike, for evidence or other items that should not be in the record. *See* Evidence Rule 103(a)(1) (claim of error may not be predicated upon ruling unless there was a timely objection or motion to strike); *Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1 (Alaska 1978) (court should strike expert testimony that would not be of appreciable assistance to jury); *Sylvester v. Sylvester*, 723 P.2d 1253 (Alaska 1986) (motion to strike mortgage should not have been granted because adverse party was not given adequate opportunity to argue for admission); *Yukon Equipment, Inc. v. Gordon*, 660 P.2d 428, 432 (Alaska 1983) (trial court struck expert witness from witness list).

The superior court also denied Paula's motion for reconsideration and her attempt to refile the report almost four months later. Neither of these rulings constituted an abuse of discretion.

Based upon our review of the record we hold that the superior court did not abuse its discretion in denying Paula's motion to set aside the estate's sale of its stock in Carroll–Vondra, Inc. As noted above, with full knowledge that the personal representative had not obtained an appraisal of the corporation's assets, Paula failed to object to the superior court's approval of the sale of the estate's stock in Carroll–Vondra, Inc. Furthermore, Paula delayed approximately one and one-half years after the sale received court approval before challenging it (again with full knowledge that there had been no appraisal). Given Paula's consistent failures to raise objections in a timely manner, it was not an abuse of discretion on the superior court's part to reject Paula's motion to set aside the estate's sale of its stock in Carroll–Vondra, Inc.[10]

### B. *The Estate's Sale of Its Interest in the Partnership*

■ In response to Paula's objections to the "Opinion of Value," Donna obtained an analysis and ultimately a "full appraisal" of the value of the estate's interest in the partnership. The "Opinion of Value" considered the values of the partnership's properties in Alaska as well as properties owned and located in the states of Washington and Colorado. The full appraisal was limited to just some of the partnership properties which were located in Alaska.

Paula advances two substantive objections to the "full appraisal" of the partnership's assets. First, she notes that the full appraisal does not purport to evaluate the partnership properties which are located in the states of Colorado and Washington. Second, "both sets of property evaluations offered by [the appraiser] assume that the 'best and highest use' of the partnership's real property holdings is a residential use and the appraisals were completely silent on the property's mineral value or commercial use."

Unlike Paula's belated attack on the superior court's approval of the sale of the estate's stock holdings in Carroll–Vondra, Inc., her objections to the estate's sale of its half interest in the partnership were timely filed. Thus, we reach the merits of the issue.

The "Opinion of Value" valued the estate's half interest in the partnership at $290,200. This figure was subsequently revised to $274,049 because of an error in the computation of the original value. The "Land and Buildings" component of the "Opinion of Value" set forth a value of $337,048. This figure consisted of eleven "tracts" of land. After Paula objected to the "Opinion of Value" appraisal, five of these eleven tracts were reappraised in the "full appraisal."

The differences in valuation amounts between the "Opinion of Value" and the "full appraisal" for these five tracts are as follows:

| Description | Opinion of Value | Full Appraisal | Difference |
| --- | --- | --- | --- |
| Ripple [11] | 14,600 | 42,200 | +27,600 |
| Plack Road [12] | 3,000 | 4,200 | +1,200 |
| Van Horn Road [13] | 57,000 | 63,300 | +6,300 |
| BFG Property [14] | 28,000 | 56,250 | +28,250 |

10. For purposes of construing Alaska's version of the Uniform Probate Code, AS 13.06.010(b) provides:

The underlying purposes and policies of AS 13.06—AS 13.36 are to

. . . . .

(3) promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to the decedent's successors. . . .

AS 13.16.355 provides in relevant part:
A personal representative shall proceed expeditiously with the settlement and distribution of a decedent's estate. . . .

11. Referred to as "Holmes Road" in the full appraisal.

12. Referred to as "Repp Road" in the full appraisal.

13. Referred to as "North Van Horn Street" in the full appraisal.

14. Referred to as "Badger Road" in the full appraisal.

| Description | Opinion of Value | Full Appraisal | Difference |
| --- | --- | --- | --- |
| Fox [15] | 63,400 | 80,250 | +16,850 |
| Totals: | $166,000 | $246,200 | $80,200 |

Based upon our review of the record we hold that the superior court's approval of the estate's sale of its 50% interest in the Carroll–Vondra partnership should be set aside and vacated.

We reach this disposition for the following reasons. First, the "full appraisal" upon which the superior court relied in approving the personal representative's motion to sell the estate's interest in the partnership is underinclusive in that it omitted to value the partnership's holdings in the states of Colorado and Washington.[16] Second, the "full appraisal" fails to value four other Alaska partnership properties (tracts) which were valued in the "Opinion of Value." Third, on this record the qualitative differences between the values listed in the "Opinion of Value" and those properties appraised in the "full appraisal" can not be characterized as mere semantic differences.[17]

The basic duty of a personal representative is to act in accordance with "the standards in dealing with the [estate] assets that would be observed by a prudent man dealing with the property of another...." AS 13.36.075, AS 13.16.350. The probate code requires the personal representative to make an inventory and appraisement which lists the fair market value of estate assets. AS 13.16.365. Subject to the prudent person standard, employ-

ment of appraisers are discretionary. AS 13.16.370. The personal representative has a duty to make a supplementary inventory and appraisement if property not included in the original inventory comes to the personal representative's knowledge or if the personal representative "learns that the value or description indicated in the original inventory for any item is erroneous or misleading." AS 13.16.375. The personal representative is authorized to sell estate property (except in cases of conflict of interest) without approval of the court. AS 13.16.390, AS 13.16.410(6). In general, the personal representative can do anything that the deceased might have done, AS 13.16.390, as long as it comports with the "prudent person standard".

In the present case, Donna sought approval of the sale of the partnership assets. Over objection, the trial court granted approval of the sale. Such approval may preclude on res judicata or collateral estoppel grounds a subsequent claim by Paula that the sale was in breach of the personal representative's duties. See Gump v. Wells Fargo Bank, 237 Cal.Rptr. 311, 322 (Cal.App.1987) (approval of executor's account bars on res judicata grounds subsequent claim of mismanagement).

Paula argues that Donna, as personal representative, had a duty to properly and fully appraise all partnership assets. She con-

15. Referred to as "Old Steese Highway" in the full appraisal.

16. The "Opinion of Value" values the Valliant, Washington partnership property at $56,948. The "Opinion of Value" values the Colorado acreage owned by the partnership at $23,750.

17. As noted in the text above as to the five tracts appraised in the "full appraisal," this second appraisal concluded that the partnership's interest was worth $80,200 more than the values found in the "Opinion of Value" for the same properties.

Regarding the methodology employed by the appraiser in producing the "Opinion of Value," the record contains a critique by a senior appraiser wherein it is stated in part:

I have performed a preliminary review of the "opinions of value" ... and am sorry to inform

you that I cannot provide a standard appraisal review of the document. The reason is that the provided document(s) contains insufficient information to be considered an appraisal by any reasonable contemporary standard.

. . . . .

Not to belabor the point, the provided document arguably meets very few of the above requirements and is simply not reviewable under similarly detailed Review Appraisal Standards. Some specific areas of concern include ... the following:

Apparently the appraiser did not even inspect all of the subject properties.

No comparable sales information was provided.

Severe discounting of property values without any support for marketing time or discount rates used.

tends that Donna violated this duty, requiring that the sale of the partnership assets be set aside.

If a duty to obtain a full formal appraisal exists, it is founded not on any specific statutory requirement that an appraiser be employed or that an appraisement take any particular form, but on the more general duty of prudent management. In this case the trial court did not address the question of whether the sale was consistent with the prudent person standard. The discrepancies between the original opinion of value and the subsequent appraisal, the fact that the sale price was not increased in line with the subsequent appraisal, and the fact that not all of the property was covered in the subsequent appraisal all raise questions as to whether the sale was in accordance with the standard.

It is for these reasons that we have concluded that the superior court's order approving the estate's sale of its interest in the Carroll–Vondra partnership must be set aside and the matter remanded with directions to the trial court to specifically address whether the sale accords with the prudent management requirement. The court may conduct supplemental evidentiary proceedings prior to entering findings of fact and conclusions of law on this point.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.